# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 05-CV-02342-WYD-MJW

(To be supplied by the court)

NIDAL A. AYYAD _____, Plaintiff,

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

v.

JUN 2 7 2006

GREGORY C. LANGHAM
CLERK

ALBERTO GONZALES (U.S. Attorney General)

John Does, FBI Agents _____,

R. Wiley, ADX WARDEN _____,

MICHAEL K. NALLEY, Regional Director

HARREL WATTS, Administrator National Inmate Appeal

Harley G. Lappin, BOP Director _____,

Federal Bureau of Prisons _____,

_____, Defendant(s).

(List each named defendant on a separate line.)

"Second Amended PRISONER COMPLAINT"

(Rev. 9/02/04)

## A. PARTIES

1. NIDAL A. AYYAD # 16917-050, United States Penitentiary - MAX
   (Plaintiff's name, prisoner identification number, and complete mailing address)
   ("ADX"); P.O. Box 8500, Florence, Colorado, 81226-8500

2. MR. ALBERTO GONZALES, United States Attorney General
   (Name, title, and address of first defendant)
   Department of Justice, Constitution Ave. # 10th St. NW; Washington DC 20530
   At the time the claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

   Acting under Federal Law, Federal Government official

3. John Does', Federal Bureau of Investigation "FBI" Agents "Unknown"
   (Name, title, and address of second defendant)
   935 Pennsylvania Ave, NW; Washington DC 20535
   At the time the claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

   Acting under Federal law, Federal Government Agents

4. R. WILEY, WARDEN; U.S. Penitentiary - MAX ("ADX")
   (Name, title, and address of third defendant)
   P.O. Box 8500, Florence, CO 81226-8500
   At the time the claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

   Acting under Federal Law, a Warden of Federal Prison.

(If you are suing more than three defendants, use extra paper to provide the information
requested above for each additional defendant. The information about additional defendants
should be labeled "A. PARTIES.")

(Rev. 9/02/04)                    2

## "A. PARTIES"

5. Fourth Defendant: MR. MICHAEL K. NALLEY, REGIONAL DIRECTOR OF Bureau OF Prisons; 400 State Ave, Tower II, 8th Floor, KANSAS City, KANSAS, 66101-2492

   - Was defendant acting under color of state law? — yes ✓ No
   DEFENDANT WAS ACTING UNDER FEDERAL LAW, a Regional Director of BOP

6. Fifth Defendant: MR. Harrel WATTS, Administrator of National Inmate Appeal.
   Federal Bureau of Prisons (BOP), Central office
   320 First ST., NW; Washington DC 20534

   - Was defendant acting under color of state law? — yes ✓ No
   Defendant Was acting under Federal Law, An Administrator in the Central office of the BOP.

   ~~fourth defendant Lapping~~

7. ~~Seventh~~ Sixth Defendant: Harley G. Lappin, Director of Federal Bureau of Prisons
   320 First ST. NW, Washington D.C. 20534

   - Was defendant acting under color of state law? — Yes ✓ No
   Defendant Was acting under Federal law, a BOP Director.

-3-

## "A. PARTIES"

Seventh Defendant!

8. Federal Bureau of PRISONS, FEDRAL Agency
320 First Street, NW
Washington, D.C.   20534

Was defendant acting under color of state law? _Yos ✓ No
Defendant is an official Federal Bureau of Prison,
Acting under Federal law.

-4-

## B. JURISDICTION

1.  I assert jurisdiction over my civil rights claim(s) pursuant to:  (check one if applicable)

    _____   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

    ✓   28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2.  I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

    N/A

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case.  If more space is needed to describe the nature of the case, use extra paper to complete this section.  The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

1. Plaintiff is an American Citizen.

2. The plaintiff has been incarcerated in various Federal prisons since his arrest on march 1993.

3. The plaintiff is serving (117) years and one month prison sentence for his conviction in the United States District court, for the Southern District of New York. On charges related to the 1993 World Trade Center bombing.

4. Throughout the plaintiff's incarceration, he was housed in open general population receiving ALL privileges and rights offered to other inmates, suchas: Job assignments, 300 minutes per month of telephone calls, visitation with family, relatives and friends, No correspondence restrictions, no restrictions on Newspapers or Magazines,

" C. NATURE OF THE CASE "

and received periodicals subscription freely.

5. Throughout the plaintiff's incarceration for the past (12) years, <u>All</u> of his incoming and outgoing mail. and telephone calls were all monitered very closely and translated as well.

6. On October 4th, 2002, the plaintiff was transferred to the U.S.- Penitentiary- MAX at Florence, Colorado ("ADX"), Coming from U.S. Penitentiary at Lewisburg, Pennsylvania. Shortly after his arrival at the ADX, the plaintiff was housed in a general population Unit receiving the Same treatment, privileges as other inmates housed in the Same Unit.

7. On February 28th, 2005, the "NBC" Television network has broadcasted an investigative news report during the nightly news, related to a Correspondence between the plaintiff, his Co-defendants (Mohammad Salameh, and Mahmud Abouhalima), and other prisoners in spain. The news report included many speculative allegations. [plaintiff's Co-defendants are also Incarcerated at the ADX]

8. The plaintiff has Corresponded with One prisoner in Spain as a Pen-Pal for a period of <u>One</u> year approximatelly (2003-2004). ALL Correspondence was given to ADX staff for mail processing in accordance to the mail policy of the ADX and the Bureau of Prisons ("BOP"). ALL outgoing Letters the plaintiff sent

- 6 -

## "C. NATURE OF THE CASE"

Were addressed directly to the prisoner in Spain.

9. On or about March 2004 (one year prior to the NBC report), the ADX staff informed the plaintiff that he is not allowed to correspond with the prisoner in Spain without an advanced approval. At this time, the plaintiff immediately stopped the correspondence as instructed.

10. The plaintiff in his correspondence with the prisoner in Spain, Never encouraged violance, nor he ever condoned it in any way, form, or fashion. The plaintiff never received any incident reports for Correspondence mis-conduct.

11. The following days after the NBC news report, the plaintiff seen the United States Attorney General commenting on the NBC report promising to investigate and take action.

12. On March 8th, 2002, the ADX Warden imposed on the plaintiff a "Restricted General Correspondence Restrictions" in a reaction to the NBC news report, restricting the plaintiff's Correspondence with his immediate family members only. The plaintiff received no hearing regarding the allegations and couldn't defend himself. (See Exhibit C, filed with prisoner complaint Doc. # 3)

13. The United States Attorney General ("USAG"), also in a reaction to the NBC news report, on March 18th, 2005 imposed on the

# "C. NATURE OF THE CASE"

plaintiff a Special Administrative Measures ("SAM") [see Exhibit A filed with prisoner complaint Doc.#3). The SAM restrictions deprived the plaintiff of numerous rights and privileges that he had for the past (12) years in prison without a hearing. Some of the rights and privileges the plaintiff has lost due to the SAM restrictions are, but not limited to : not allowed to correspond with relatives and friends (non-prisoners) only immediate family (see SAM article 3.g.), visits and phone calls with immediate family only (see SAM article 3.a. and 3.f), delay of non-English mail, outgoing-incoming, for periods of more than (3) months and English mail of one month delay [see SAM article 3.g. iv(1),(a)(b)], Rejecting all current subscription the plaintiff had, not allowing the plaintiff to subscribe to any Newspaper or Magazines, Being removed from General population Unit to a Special Security Unit ("SSU") in total segregation, not allowed access to T.V. news Channels in the T.V. Cell, not allowed to correspond with lawyers other than "Attorney of record". Plaintiff has No attorney of record (see plaintiff's affidavit, Doc.#4, filed in support of prisoner complaint Doc#3).

14. The FBI agents, John Does, are assigned to enforce the SAM restrictions and handle all requests submitted by the plaintiff to the ADX staff seeking approval to purchase Newspapers and Magazines Subscriptions, purching religious book or regular books. Also, FBI agents handles the plaintiff's incoming-outgoing mail to process it according to the SAM restrictions, delaying the non-English mail (60) Sixty business days and English for one month.

-8-

## "C. NATURE OF THE CASE"

15. The ADX staff provide the plaintiff with a daily issue of the USA-Today Newspaper, one month delayed issue, with several pages/sections removed due to the "SAM".

16. Since the "SAM" has been imposed on the plaintiff, not one single publication subscription request was approved, not one single issue of his current active subscription was given to him. ALL subscriptions current active or requested are denied - rejected by ADX staff and FBI agents according to "SAM" restrictions. ALL of the plaintiff's incoming - outgoing correspondence with his mother who lives in New Jersey is taking about 3-4 months (Arabic mail) for delivery or mailing out. All of this due to "SAM" restrictions.

17. On March 29th, 2006, the U.S. Attorney General through the ADX Warden, R. Wiley, served the plaintiff with "Notification of Extension/Modification of Special Administrative Measures" ("the New SAM") [see Exhibit attached herein A1] this would extend the SAM restrictions document for an additional Year.

18. The plaintiff was not given any hearing to challenge or argue against the extension of the SAM, nor he was allowed to a defense presentation.

19. The "New SAM" added further restrictions on the plaintiff limiting his outgoing correspondence volume and frequency

-9-

"C. NATURE OF THE CASE"

to a three (3) pieces of paper not larger than $8\frac{1}{2}$" X 11" double sided once per ~~one~~ Calender Week to a Single immediate family recipient [See Exhibit A1, article 3.g.i, page #9] Which makes correspondence more difficult with family.

20. As of this day, the plaintiff was not charged with any mis-conduct whatsoever, the plaintiff had and still has clean conduct while at the ADX, did not receive any incident reports at all.

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1.   Claim One: The defendants violated the plaintiff's First Amendment Rights
     BY implementing, imposing the "SAM" document.
     Supporting Facts:

21. The plaintiff realleges and incorporates by reference his assertions in paragraphs 1 through 20 as if fully restated herein.

22. In the manner described herein 1 through 17 and the paragraphs of this claim the defendants Gonzales, John Does', Wiley, Nalley, Watts, Lappin, and the BOP acted in conceret and deprived the plaintiff of his rights secured by the First Amendment to the United States Constitution when they implemented and imposed the SAM restrictions document.

23. Defendant Gonzales, the U.S. Attorney General, on March 18th, 2005, has ordered and directed the BOP officials including defendants Lappin, Nalley, and Wiley, to impose and implement the Special Administrative measures ("SAM") restriction document on the plaintiff. The SAM is a one document consist of numerous restrictions that deprived the plaintiff of his First Amendment rights and other Constitutional rights aswell. Some of these restrictions are, but not limited to (see Exhibit A, filed with prisoner complaint Doc. #3):

 _ SAM article 1.a. gives control and priority to whatever is more restrictive, the BOP policy or the SAM restrictions

 _ SAM article 1.c. outline ALL of the plaintiff's communication Prohibitions with the exception of what the SAM allows,

## "D. CAUSE OF ACTION"

(Only immediate family members are allowed)

- SAM article 2.a., footnote ①, defines the only attorney the plaintiff is allowed correspond/communicate with is the "Attorney of record", The plaintiff has no Attorney representing him.

- SAM article 2.i., footnote ⑥, defines what is the Legal mail the plaintiff is allowed, is a mail to "Attorney of Record" ONLY. ALL other mail is to be processed as NON-LEGAL MAIL

- NON-LEGAL mail is defined in SAM article 3.g.i as to be mail to immediate family members only (i.e. spous, child, parents and Siblings) No exceptions are made.

- SAM article 3.g.iv(1)a, b, and c specify that the government after analysis and review of the plaintiff's non-English correspondence will delay/hold it for (60) sixty business days, and (14) business days for English mail. This causes excessive delay of 3 months or more.

- SAM article (4) forbids plaintiff's communications with media, through correspondence, Telephone calls, or visits or any other means.

- SAM article (5) forbids the plaintiff from group prayers.

- SAM article 6.a. and (b) forbids the plaintiff from talking to other inmates, Article (8) forbids the plaintiff from making statements to other inmates in the Cell block.

- SAM article (10) restricts the plaintiff's access to Newspapers, periodicals, and Publications, which should be approved by the FBI, BOP, and U.S. Attorney for the Southern District of New York, (So far no publication, news paper, or magazines, has been approved) See SAM article 10.a.i

"D. CAUSE OF ACTION"

Also, the government will remove all sections from the publication such as advertisment, classified, letters to the editor, then would give the publication to the plaintiff after (30) days delay, if publication is in Arabic, SAM article 3.g.iv would apply (60) business days additional delay (see SAM article 10.i, ii, ii )

Its clear that defendant Gonzales intended to have the above SAM restrictions imposed and applied on the plaintiff when he issued the SAM document and directed the rest of the defendants to carry it out.

24. Pursuant to 28CFR 501.3, the U.S. Attorney General has directed the defendants Harley G. Lappin and the BOP to implement the SAM on the plaintiff as of March 18, 2005. Defendant Lappin is the Director of the BOP and responsible for all Federal prisons in the nation, to ensure all policies are implemented, laws are applied, and drafting of policy. Further, pursuant to 28 CFR 501.3 the U.S. Attorney General authorized and requested that defendants, Lappin and the BOP, implement the SAM on the plaintiff and to carry out every single restriction included in the document. Defendants Lappin and the BOP authorized and instructed the ADX warden to impose, implement and enforce the SAM document on the Plaintiff. In addition, defendants R. Wiley, Nalley, and Watts are employees of the BOP and report to its director Mr. Lappin. Defendants Lappin and the BOP are directly involved in violating

## "D. CAUSE OF ACTION"

the plaintiff's rights secured by the First Amendments and other rights.

25. Once the SAM restrictions document was imposed on 3/18/05, on the plaintiff, defendants John Does', FBI agents, were assigned to enforce and implement the SAM restrictions document, Since there are several SAM restrictions require a direct involvement of the FBI. Further, the defendants, John Does supervise and coordinate the implementation of the SAM with the ADx staff. The plaintiff is not sure out of what FBI office the defendant John Does' were appointed from. As instructed in the SAM document, the plaintiff submitted numerous requests to subscribe to Newspapers, and Magazines, ALL requests were DENIED per defendants John Does. The denial was communicated to the plaintiff through ADx staff. Further, defendants John Does are the actual one in direct charge of translating, processing, analyzing, and delaying the plaintiff's correspondence (non-English) over (3) three months according to SAM article 3.g. The defendants, John Does, would only process mail that is allowed by SAM restrictions document (only immediate family members are allowed), not even soliciting a lawyer is permitted in the SAM document. John Does are willing participants in depriving the plaintiff of his First Amendment Rights

26. Defendant, R. Wiley, is the ADx warden, he is in charge of the plaintiff's confinement conditions and all other related matters. Defendant Wiley is an important participant in applying and implementing the SAM restrictions document (dated 3/18/05) as it's written on the plaintiff,

## "D. CAUSE OF ACTION"

enforcing every single restriction in the SAM document, as the document instruct. Defendant Wiley stops and rejects all incoming mail sent to plaintiff from friends and relatives, also stops and rejects all incoming publications the plaintiff subscribed prior to SAM imposition. On April 7th, 2005, the plaintiff filed an administrative Remedy request in the defendant's office seeking the REMOVAL OFF ALL SAM Restrictions (SEE Exh. C filed with prisoner Complaint Doc. #3, Case No. 371375-F2). On 4/19/05, defendant's Wiley office responded to the plaintiff grievance with "Denied" to the requested relief. (see Exh. C, case No. 371375-F2 Response). Defendant failed to remove all SAM restrictions imposed on the plaintiff, such restrictions in paragraph #23, violates the First Amendment. Also defendant doesn't allow plaintiff access to Arabic Islamic books from the Chaplain main library.

27. Defendant, Michael K. Nalley, the Regional Director of the BOP, received the administrative Remedy appeal filed by the plaintiff on 4/25/05 requesting the "Removal of the SAM" (see Exh. "C" filed with prisoner Complaint Doc. #3, Case No. 371375-R1) defendant Nalley responded to the plaintiff's appeal by stating "APPEAL is DENIED", Further defendant Nalley stated that the BOP has NO authority to "... remove or amend the restrictions imposed." (SEE Exh. C, Response Case No. 371375-R1) Defendant Nalley failed to correct, amend, or remove the imposed SAM restrictions, therefore he is a participant in violating the plaintiff's First Amendment Rights.

## " D. CAUSE OF ACTION "

28. Defendant Harrel Watts, is the Administrator of National Inmate Appeal at the BOP Central Office in Washington DC. The plaintiff, on 7/17/05 filed his "Central office Administrative Remedy Appeal" with this defendant, the plaintiff requested to "Remove the SAM" (See Exh. "C" filed with Prisoner complaint Dc. #3, Case No. 371375-A1) the plaintiff made other requests as well. Defendant Watts responded to the plaintiff's appeal on 9/20/05 by stating "Your Appeal is DENIED" (See response Case No. 371375-A1) Defendant Watts is a participant in violating the plaintiff's First Amendment Rights, Since he has refused to remove the SAM restrictions Document or correct or amend, Defendant failed to fullfill his responsibility.

29. On March 29th, 2006, ALL of the defendants decided to extend the SAM restrictions document imposed on the plaintiff for an additional Year. Defendant WILEY served the plaintiff with "Notification of Extension/Modification of Special Administrative measures." The extension/modification served on 3/29/06 added an additional restriction limiting the volume and frequency of the plaintiff's outgoing mail to his immediate family members to only (3) pieces of paper (not larger than 8½"×11 double sided, Once per Calender Week to a Single recipient. (see Exhibit attached herein #A1). This according to SAM article (3.g.i). This further violates plaintiff First Amendment Rights.

# "D. CAUSE OF ACTION"

30. The plaintiff prior to the SAM restriction document being imposed on him on 3/18/05, he had <u>NO</u> restrictions whatsoever. The plaintiff had several newspaper and magazines subscription, had correspondence with friend and relatives, had received visits from friends, had telephone calls with relatives, friends and family. Defendants deprived the plaintiff of all his rights and privileges including those mentioned in this paragraph.

31. As a result of the actions, directions, failing to act or correct or amend or remove the numerous SAM restrictions document imposed on the plaintiff by the aforementioned defendants caused the plaintiff irreparable harm due to the violation of his rights secured by the First Amendment to the United States Constitution.

2.  Claim Two: *The defendant violated the plaintiff's Substantive Due Process Procedural Due Process and Equal Protection Rights When the SAM was imposed.*

Supporting Facts:

32. The plaintiff realleges and incorporates by reference his assertion in paragraph 1 through 31 as if fully restated herein.

33. In the manner described herein 1 through 31, and the paragraphs of this claim, the defendants Gonzales, John Does', Wiley, Nalley, Watts, Lappin, and the BOP acted in concerst and deprived the plaintiff of his rights to Due process and equal treatment when they imposed the SAM restrictions.

34. In a response to the NBC news report's allegations and speculations, the defendant ADX Warden, imposed on the plaintiff on 3/10/05 a "General Correspondence Restrictions" (see Ex. "B" filed with prisoner complaint Doc. #3), restricting his correspondence to his immediate family members only. The plaintiff was not given any hearings to contest the allegations and restrictions. On 3/18/05 the SAM restrictions Document was imposed on the plaintiff which Lead to re-clasSification of the plaintiff's custody level, and placing him in a total segregation in the Special Housing Unit "SSU". As a result, the plaintiff Lost most of his rights and privileges that he had prior to the SAM numerous restrictions taking effect (see paragraph #23 above, and Exh. A) without offering the plaintiff a hearing to argue against any allegations, or against the government actions that deprived him of many rights, nor he was allowed to defend himself by calling witnesses.

35. On 3/18/05, in a reaction to the NBC news report, defendant Gonzales, ordered and requested that BOP director, Mr. Lappin, BOP, and other BOP officials to impose, implement, and enforce the SAM restriction document on the plaintiff depriving him of numerous constitutional rights and privileges (see Para. #23 above) and (see Ex. A). Defendant Gonzales did not provide the plaintiff with any

# "D. CAUSE OF ACTION"

hearings to argue against the SAM document and the government's actions that deprived him of his constitutional rights and privileges. The plaintiff <u>was</u> <u>never</u> charged with any wrong doing or violations to be punished.

36. Pursuant to 28 CFR 501.3, the U.S Attorney General has directed and requested that defendants Harley G. Lappin and the BOP to implement the SAM restrictions document on the plaintiff as of March 18th, 2005 Defendant Lappin is the Director of the BOP and responsible for all Federal Prisons in the Nation, to ensure all policies are implemented, laws are applied, and drafting of policy. Defendant Lappin and the BOP authorized and instructed the ADX Warden to impose, implement, and enforce the SAM restrictions <u>without</u> offering the plaintiff a hearing to argue you against it or to present witnesses. Further, defendants Wiley, Nalley, and Watts are employees of the BOP and report to its director Mr. Lappin. Therefore Lappin and the BOP are essential participant in violating the plaintiff's Due process rights.

37. Defendants, John Does', FBI agents, once the SAM restrictions were imposed on the plaintiff on 3/18/05, they were assigned to enforce, moniter and implement the SAM numerous restrictions in Coordination with the ADX Warden and BOP officials. In accordance to various SAM articles, defendants John Does' processed many requests submitted by the plaintiff seeking approval to subscribe to various periodicals, John Does always denied plaintiff's request <u>without</u> providing him with any <u>Due Process</u> to appeal or challenge their denial. Further, in order for

"D CAUSE OF ACTION"

the plaintiff to receive a Visitor or call or correspond must be Verified and approved by the FBI agents John Does. In a case of the FBI agents denial for a request, the plaintiff has no due process to appeal the agents decision to a higher FBI authority. Its known that the defendant John Does are FBI agents report directly to the FBI agency not the BOP. The plaintiff has no due process when it comes to FBI agents decision.

38. The defendant Nalley is the BOP Regional Director, part of responsibilities are to ensure that all BOP officials in his region adhere to policy, due process of the Law, and regulation. After the SAM restrictions were imposed, the plaintiff submitted a grievance appeal to defendant Nalley office on 4/25/05 (see Ex. "C" Case No. 371375-R1, filed with Prisoner Complaint Doc. #3) in which the plaintiff complains about the SAM restrictions were unjustly imposed without committing any wrong doing or violation. Defendant Nalley failed to investigate the matter and ensure that the plaintiff's rights were restricted according to due process of the Law.

39. Defendant Watts, the Administrator of National Inmate Appeal, received a grievance filed on 7/17/05 (see Ex. "C" Case No. 371375-A1, filed with Prisoner Complaint Doc. #3) in which the plaintiff requesting the removal of the SAM document, and that the restrictions were imposed unjustly without due process. Defendant Watts responded on 9/20/05 (see Ex. "C" response Case No. 371375-A1) DENYING all of the plaintiff's requests

## "D. CAUSE OF ACTION"

and concerns. Defendant Watts failed to ensure that due process rights of the plaintiff's are protected after the SAM restrictions were imposed.

40. Defendant Wiley and his agents/staff are NOT treating the plaintiff equally as they treat other inmates at the ADX since the SAM restrictions were imposed on 3/18/05 and until the present time. As the ADX Warden, Wiley knows that the plaintiff received ALL rights and privileges as other inmates until 3/18/05 were the plaintiff lost most of his rights and privileges and received a different treatment, such as, but not limited to:

- Unlike other inmates, the plaintiff is not allowed to receive or subscribe to newspapers, magazines, and periodicals.

- Unlike other inmates, plaintiff must remain in full body restraints during a non-contact visits with his mother and child.

- unlike other inmates, plaintiff is given one phone call per month instead of two, and staff select what time to call not the plaintiff.

- Unlike other inmates, the plaintiff is not given an opportunity to participate in programs that would progress him to a less restrictive unit and ultimately to be transferred to a regular U.S. Penitentiary.

- Unlike other inmates, the plaintiff has no access to Arabic Islamic books in the chaplain's main library.

- Unlike other inmates, plaintiff is not allowed correspondence, visitation, phone calls with relatives and friends.

- Unlike other inmates, plaintiff is not allowed access to News channels on his cell T.V.

" D. CAUSE OF ACTION "

41. On March 29th, 2006, ALL of the defendants under the authorization of the U.S. Attorney General decided to extend the SAM restriction document, to be imposed for another year. Defendant Wiley served the plaintiff with "Notification of Extension/modification of Special Administrative Measures." (SEE Ex. A1, attached herein) No hearing was offered to the plaintiff at the time of the SAM extension, nor the plaintiff was given an opportunity to argue against the defendants action nor he was allowed to present witnesses, evidence or defense. The extended SAM contains the SAME restrictions as the 3/18/05 SAM with an additional restriction on volume and frequency of the plaintiff's correspondence with his immediate family (see paragraph # 29 above).

42. As a result of the actions, directions, failure to correct or act or fix the violation of rights, the plaintiff's due process and equal protection rights were violated by the aforementioned defendants.

3.   Claim Three: <u>The defendants violated the plaintiff's Fourth Amendment</u>
<u>Rights, unreasonable search and seizure.</u>
Supporting Facts:

43. The plaintiff realleges and incorporates by reference his assertions in paragraphs 1 through 42 as if fully restated herein.

44. In the manner described in 1 through 42, and in the paragraphs of this claim, defendants Gonzales, John Does (FBI agents), and Wiley acted in concert and deprived the plaintiff of his rights secured by the fourth Amendment when they imposed and implemented the SAM restrictions document.

45. Defendant Gonzales, on March 18th, 2005 has ordered directed the BOP, BOP officials, BOP director to impose and implement the SAM restrictions document on the plaintiff. Among the numerous restrictions in the SAM some that constitute an unreasonable search. SAM article 3.g.(iv), a, b, and c, the Federal government would hold, delay, analyize, and review the plaintiff's non-English mail for a period of (60) sixty business days in order to complete analysis and search, and (14) business days for English mail. Further, in the SAM document article 10.a.ii and iii the Federal government would remove sections from any periodicals prior to delivering it to the plaintiff after a (30) days delay. Thats if the plaintiff should be approved to subscribe to such periodicals or newspapers.

46. Defendant John Does, FBI agents, were assigned to enforce moniter and implement the SAM restrictions document, once it was imposed on 3/18/05, in coordination with the ADX Warden and his staff. John Does are the actual one who would translate, hold, delay, search, and review the plaintiff's outgoing-incoming mail in accordance with SAM article 3.g. iv, b, and c, delaying non-English mail (60) sixty business days. Further, defendant John Does, according to SAM article 10.a.ii and iii

# "D. CAUSE OF ACTION"

decides what sections to remove from periodicals/News papers may subscribe to, plus a (30) days delay prior to delivery. These actions by defendants John Does shows they are direct participant in violating the plaintiff's Fourth Amendment rights. In particular, when John Does hold/delay the plaintiff's mail to/from his mother who lives in New Jersey for 3 months to translate a one page letter -- a one minute Job!

47. Defendant Wiley, is a participant in depriving the plaintiff of his Fourth Amendment rights. The plaintiff deals directly with the defendant or his designee with respect to his incoming-outgoing mail. The plaintiff either turn in mail to staff or receive it. Whether it's incoming/outgoing mail the delay takes place according to the SAM restrictions articles discussed in Para. 46. The Warden and his designee are fully aware of the (60) Business days delay on the plaintiff's mail, since the Warden is the actual handler of the mail. Defendant Wiley's office denied the plaintiff's grievance requesting the removal of all restrictions in the SAM (see Exh. "C" Case No. 371375-F2, filed with Doc.#3) In addition, Wiley provide the plaintiff with several sections removed from a USA-Today newspaper daily issue (30 days delayed). Wiley failed to correct or amend such violation. Furthermore, Wiley does not allow the plaintiff to seal any legal mail to the court or any other legal matters for the purpose of searching/reading such mail.

"D. CAUSE OF ACTION"

48. As a result of the actions, directions, failure to act or correct the SAM restrictions imposed on the plaintiff by the aforementioned defendants caused the plaintiff a deprivation of his rights secured by the Fourth Amendments to the U.S. Constitution.

Claim Four: The Defendants deprived the plaintiff of his Sixth Amendment Rights, to have a lawyer, or hire a lawyer, or solicit a Legal assistance as per the SAM document.

49. The plaintiff realleges and incorporates by reference ~~his paragraphs~~ his assertions in paragraphs 1 through 48 as if fully restated herein.

50. In the manner described herein 1 through 48 and in the paragraphs of this claim, defendant Gonzales, Johne Does, Wiley, Nalley, Watts, Lappin, and the BOP, acted in Conceret and deprived the plaintiff of his rights Secured by the Sixth Amendment rights when they imposed and implemented the SAm restriction document.

51. Defendant Gonzales, on March 18th, 2005, has ordered directed the BOP director Mr. Lappin, the BOP, and other BOP officials to impose ~~the~~ and implement the SAM restrictions document in its entirety on the plaintiff. The SAM restrictions document is a ONE document that consist of numerous restrictions. According to the SAM restrictions document, under communication Prohibitions, the plaintiff is instructed: "-- You are limited -- from having contact--

" D. CAUSE OF ACTION "

.. with any inmate, Attorney, or anyone else except as outlined ~~by~~ and allowed by this document. )) [ See Ex. A, SAM article 1.C ]   The outlined and allowed correspondence by this document are immediate family members only (see SAM article 3.g.i ) and "Attorney of Record" (see SAM article 2.i and 2.a ), the plaintiff has NO attorney of record, nor he has any legal representation. This leaves the plaintiff with correspondence to immediate family members only. No correspondence is allowed with lawyers or law advocates groups for soliciting a representation since they are not outlined or allowed by the SAM restriction document. Any mail written by the plaintiff to a party not outlined and allowed by the SAM is rejected. The SAM makes No exceptions to its articles.

52. Defendant John Does, are the FBI agents assigned on 3/18/05 to enforce, implement and moniter, that every SAM restriction is carried out on the plaintiff. John Does will not ~~release~~ release any of the plaintiff's correspondence unless its outlined and allowed by the SAM restriction document. As discussed in paragraph # 51, defendant John Does are enforcing SAM articles 1.C, 2.a, and 3.g.i which leaves the plaintiff with a correspondence to his immediate family members only, the plaintiff has NO attorney of record to represent him. Plaintiff is not permitted to solicit lawyers or law advocates through correspondence by the defendant because such correspondence is NOT outlined and allowed by the SAM.

## " D. CAUSE OF ACTION "

53. Pursuant 28 CFR 501.3, the U.S. Attorney General has directed and requested that defendants Harley G. Lappin and the BOP to implement the SAM restriction document in its entirety on the plaintiff as of March 18th, 2005. Defendant Lappin is the Director of the BOP and responsible for all Federal Prisons in the Nation, to ensure all policies are implemented, laws are applied and drafting policy. Defendant Lappin and BOP, instructed Mr. Wiley, ADX Warden, to impose, implement and enforce the SAM restrictions which included, among other restrictions, restricting plaintiff from corresponding with lawyers or law advocates as discussed in Paragraph # 51. Further, defendants Wiley, Nalley, and Watts are employees of the BOP who report to its director Mr. Lappin. Therefore, Mr. Lappin and the BOP are essential participant in violating the plaintiff Sixth Amendment rights.

54. The ADX warden, defendant Wiley, is fully aware of the SAM restrictions document when it was imposed on 3/18/05 on the plaintiff. Wiley is aware of every single restriction in the SAM document, Since he must ensure its Implementation on the plaintiff. As discussed in Paragraph # 51 the plaintiff is prohibited from corresponding with anyone except those outlined and allowed by the SAM restrictions document. The plaintiff on 4/7/05 filed an administrative Remedy request with the defendant's office seeking Removal of ALL restrictions (see EX. "C" Case No. 371375-F2, filed with Doc. #3)

" D. CAUSE OF ACTION "

Defendant's office Denied the plaintiff request (remedy) [see
EX "C" response case NO. 371375-F2, filed with Doc.#3] the
defendant failed to correct or remove the unconstitutional
restrictions in the SAM document.

55. Defendant Nalley, the BOP Regional Director in charge of all BOP
prisons in his region. On 4/25/05, the plaintiff filed a Regional
Administrative Remedy Appeal seeking the REMOVAL of the
SAM restrictions document (see EX "C", case NO. 371375-R1, filed
with Doc.#3) Defendant Nalley on 7/3/05 'DENIED" the
plaintiff's administrative Remedy appeal. Nalley in his unequivocal
response to the plaintiff stated cc.. The Special Administrative
measures 'SAM' are within the Jurisdiction of the United States
Attorney General and the Bureau of prisons has NO authority to
remove, or amend the restrictions imposed. » (see Ex. "c" Response
Case No. 371375-R1, filed with Doc.#3). Plaintiff's rights to
correspond with any lawyer or law advocate group is violated
by the defendant's participation since he is aware of the SAM
restrictions and refused to correct, remove or amend it.

56. Defendant Watts, is the administrative of National Inmate
Appeal on 7/17/05, the plaintiff filed with the defendant's office
a Central office administrative Remedy appeal seeking to
Remove the SAM restriction document, in addition to other
requests (see Ex. "C" case# 371375-A1, filed with Doc.#3).

## " D. CAUSE OF ACTION "

Defendant Watts Denied the plaintiff's appeal ( see response Case No. 371375-A1) . The defendant knows what kind of restrictions are within the SAM document, in particular limiting correspondence to immediate family members only , No exceptions are made, No correspondence with lawyers or law advocates groups (not allowed by the SAM) Defendant participated in violating the plaintiff's rights in this claim because he failed to correct or remove the SAM restrictions.

57. As a result of the actions, directions, and failure to act or correct or remove or amend the SAM restrictions imposed on the plaintiff by the aforementioned defendants caused the plaintiff deprivation of his rights secured by the Sixth Amendment to the United States Constitution, to solicit a lawyer by correspondence or solicit Legal assistance by corresponding with law advocates.

_____

● 29 ●

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   KATHLEEN HAWK-SAWYER, BOP Director, et al.

2. Docket number and court name:

   1:CV-02-1198, U.S. District Court, Middle District of Pennsylvania (Judge Blewitt)

3. Claims raised in prior lawsuit:

   Constitutional Violation related to prison conditions, segregation, loss of privileges, etc.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   Dismissed

5. If the prior lawsuit was dismissed, when was it dismissed and why?

   June 23rd, 2003, Defendant motion for Summary Judgement GRANTED

6. Result(s) of any appeal in the prior lawsuit:

   No Appeal was filed

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

   ✓ Yes ___ No (CHECK ONE).

2. Did you exhaust available administrative remedies? ✓ Yes ___ No (CHECK ONE).

   If yes, either attach copies or describe with specificity how you have exhausted administrative remedies. If no, briefly explain why not:

   Original Copies of administrative Remedies requests and appeals were submitted with the initial prisoner Complaint (Doc. #3) Exhibit "C"

## G. REQUEST FOR RELIEF

State the relief you are requesting.  If you need more space to complete this section, use extra paper.  The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

(A) Issue a Declaratory Judgment stating that :

The Special Administrative Measures ("SAM") restrictions document imposed on the plaintiff by the defendants and implemented by them and their agents is unconstitutional measures and the restrictions in the SAM violated the Plaintiff's rights under First, Fourth, Fifth, and Sixth Amendments to the United States Constitution.

(B) Issue an injunction ordering the defendants: Alberto Gonzales, John Does FBI agents, R. Wiley (ADx Warden), Harley G. Lappin (BOP Director), and the B.O.P. to: ① immediately remove the Special Administrative Measures (SAM) restrictions document from the plaintiff. [Continue on additional page]

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on ___June 23rd, 2006  [6/23/2006]___
              (Date)

_____
(Prisoner's Original Signature)

## "G. REQUEST FOR RELIEF"

2. Reinstate all rights and privileges the plaintiff had prior to February 28th, 2005 (the day of the NBC News report), and place the plaintiff back in general population Unit.

3. Allow and permit the plaintiff to have general Correspondence with his non-prisoner relatives, and friends without any restrictions as he had prior to the 2/28/05.

4. Allow the plaintiff telephone calls and social visits with his family, relatives, and friends (non-prisoners) similar to what he had prior to 2/28/05.

5. Allow the plaintiff to receive all of his active publications subscription he had prior to the "SAM" being imposed on 3/18/05.

6. Allow the plaintiff to place subscription orders for newspapers, magazines, and to purchase them as he did prior to the "SAM" being imposed. The publications to be in any language Arabic, English.

7. Allow the plaintiff access to television channels that broadcast news, just as he had prior to the "SAM".

8. Allow the plaintiff access to Arabic Islamic books available in the ADX main chaplain's library, and allow the plaintiff to purchase similar books as he had prior to the "SAM" being imposed.

"G. REQUEST FOR RELIEF "

9. NOT to delay or hold the plaintiff's non-English (Arabic) mail incoming-outgoing for 3 (three) months (60 Business days) or longer. Instead to process plaintiff's Arabic mail in 2-4 weeks as it was befor the "SAM", and to process the English mail in (2) weeks.

10. Allow the plaintiff access to Islamic Counselor and provide such Counselor to the plaintiff.

11. NOT to remove any sections/pages from any publications the plaintiff may receive, i.e. sections as editorial, classified, Opinion, Letters to the editor, etc. Should not be removed. Also, NOT to delay the publications/newspaper for (30) days. To process all incoming publication for delivery as it was prior to the "SAM" being imposed.

(C) Issue an Injunction Ordering defendants: R. Wiley (ADx Warden) Harley G. Lappin (BOP Director), and the BOP, and their agents to:
① Allow the plaintiff and permit him to return to his Classification status prior to imposing the "SAM".
② Allow the plaintiff to progress and proceed in the ADX-step down programs to have the opportunity to progess to a less restrictive unit where he could ultimately be transfered to another Prison.

(D) Issue a Preliminary Injunction Ordering the defendants: Alberto Gonzales, FBI agents John Does, R. Wiley (ADx Warden) to:

● 33 ●

"G. REQUEST FOR RELIEF "

① Immediately allow the plaintiff to correspond with his non-prisoners relatives and friends.

② not to delay or hold the plaintiff's non-English (Arabic) mail for (3) three months or longer, instead process it in 2-4 weeks time frame, and English mail in (2) weeks.

③ Immediately allow plaintiff to receive visitation with relatives and friends, and telephone calls with them, as he did prior to the "SAM".

④ Immediately allow plaintiff to receive all of his active subscriptions to newspapers and magazines, and allow him to make new orders to newspapers and magazines. NOT to allow defendants to remove any sections from the publications or not to delay it for (30)days

⑤ Allow the plaintiff access to News Broadcasting channels on T.V.

Ⓔ Award compensation to all expenses associated with this action to the plaintiff and award compensation to all publication subscriptions the ADX Warden rejected due to the "SAM".

Ⓕ GRANT SUCH OTHER RELIEF AS IT MAY APPEAR THAT PLAINTIFF IS ENTITLED.

EXHIBIT A1

"New, Extended, Modified SAM"



**U.S. Department of Justice**
**Federal Bureau of Prisons**
United States Penitentiary
Administrative Maximum

---

*Office of the Warden*                                    *Florence, CO  81226*

March 29, 2006

MEMORANDUM FOR AYYAD, Nidal, Register Number 16917-050

FROM:                    R. WILEY, Warden

SUBJECT:          **Notification of Extension/Modification of Special Administrative
                         Measures**

Pursuant to 28 C.F.R. § 501.3, special administrative conditions were implemented regarding
your confinement. The Bureau of Prisons adopted these special administrative conditions based
on information of your proclivity for violence. There is a substantial risk that your
communications or contacts with persons could result in death or serious bodily injury to
persons, or substantial damage to property that would entail the risk of death or serious bodily
injury to persons. Therefore, you are restricted in access to the mail, the media, the telephone,
and visitors. This SAM will commence immediately upon expiration of the prior SAM
authorization period and will be in effect for a period of one (1) year, subject to further direction.

1. **General Provisions**:

   a.   **Adherence to Usual United States Marshals Service (USMS), Bureau of Prisons
        (BOP) and Detention Facility (DF) Policy Requirement** - In addition to the below
        listed SAM, you must comply with all usual USMS, BOP, and non-BOP DF policies
        regarding restrictions, activities, privileges, communications, etc. If there is a conflict
        between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM is
        more restrictive than usual USMS/BOP/DF policies, then the SAM shall control. If usual
        USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF
        policies shall control.

   b.   **Interim SAM Modification Authority** - During the term of this directive, the Director,
        Office of Enforcement Operations (OEO), Criminal Division, may modify your SAM as
        long as any SAM modification authorized by OEO:

        i.   Does not create a more restrictive SAM;

---

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 2

    ii. Is not in conflict with the request of the Counterterrorism Section (CTS/CRM), the U.S. Attorney for the Southern District of New York (USA/SDNY), Federal Bureau of Investigation (FBI), or USMS/BOP/DF, or applicable regulations; and

    iii. Is not objected to by the CTS/CRM, USA/SDNY, FBI, or USMS/BOP/DF.

c.  **Inmate Communications Prohibitions** - You are limited, within USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written or recorded communications) with any other inmate, visitor, attorney, or anyone else except as outlined and allowed by this document that could reasonably foreseeably result in your communicating information (sending or receiving) that could circumvent the SAM's intent of significantly limiting your ability to communicate (send or receive) information relating to terrorist information.

d.  **Use of Interpreters/Translators by USMS/BOP/DF - Translator Approval Requirements**:

    i. The USMS/BOP/DF may use Department of Justice (DOJ) approved translators as necessary for the purpose of facilitating communication with you.

    ii. No person shall act as a translator without prior written clearance/approval from USMS/BOP/DF, which shall only be granted after consultation with the FBI and USA/SDNY.

    iii. Translators utilized by USMS/BOP/DF shall not be allowed to engage in, or overhear, unmonitored conversations with you. Translators shall not be alone with you, either in a room or on a telephone or other communications medium.

2. **Attorney/Client Provisions**:

a.  **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document** - Your attorney (or counsel) - individually by each if more than one (1) - must sign an affirmation acknowledging receipt of the SAM restrictions document. By signing the affirmation, the

---

[1]    The term "attorney" refers to the inmate's attorney of record who has been verified and documented by the USA/SDNY, and who has received and acknowledged receipt of the SAM restrictions document. As used in this document, "attorney" also refers to more than one (1) attorney where the inmate is represented by two (2) or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his/her individual capacity.

*"Sensitive Limited Official Use Only"*

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 3

attorney acknowledges his/her awareness and understanding of the SAM provisions and his/her agreement to abide by these provisions, particularly those that relate to contact between you and your attorney and the attorney's staff. The signing of the affirmation does not serve as endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM. However, in signing the affirmation, your attorney, and pre-cleared staff, acknowledge the restriction that they will not forward third-party messages to or from you.

    i. The USA/SDNY shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to your attorney.

    ii. After initiation of SAM and prior to your attorney being permitted to have attorney/client-privileged contact with you, your attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/SDNY.

    iii. The USA/SDNY shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to the Office of Enforcement Operations (OEO) in Washington D.C. and the USMS/BOP/DF.

  **b.  Attorney Use of Interpreters/Translator:**

    i. **Necessity Requirement** - No interpreter/translator (translator) shall be utilized unless absolutely necessary where you do not speak a common language with the attorney. Any translator shall be precleared.[2]

    ii. **Attorney Immediate Presence Requirement** - Any use of a translator by the attorney shall be in the physical and immediate presence of the attorney - in the same room. The attorney shall not patch through telephone calls or any other communication, to or from you.

---

    [2]    "Precleared" refers to a translator, who is actively assisting the inmate's attorney with the inmate's defense, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed - as evidenced by his/her signature - to adhere to the SAM restrictions and requirements.

*"Sensitive Limited Official Use Only"*

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 4

    iii. **Translation of Your Correspondence** - An attorney of record may only allow a federally-approved translator to translate your correspondence as necessary for attorney/client-privileged communication.

c. **Attorney/Client-Privileged Visits** - May be contact or non-contact, at the discretion of the USMS/BOP/DF.

d. **Attorney May Disseminate Your Conversations** - Your attorney may disseminate the contents of your communication to third parties for the sole purpose of providing necessary legal services related to any post-conviction proceedings - and not for any other reason - on the understanding that any such dissemination shall be made solely by your attorney, and not by the attorney's staff.

e. **Unaccompanied Attorney's Pre-cleared Paralegal(s)[3] May Meet With You** - Your attorney's pre-cleared paralegal(s) may meet with you without the necessity of your attorney being present. An investigator or translator may not meet alone with you. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

f. **Simultaneous Multiple Legal Visitors** - You may have multiple legal visitors provided that at least one (1) of the multiple legal visitors consists of your attorney or pre-cleared paralegal. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

g. **Legally Privileged Telephone Calls** - The following rules refer to all legally-privileged telephone calls or communications:

    i. **Your Attorney's Pre-cleared Staff May Participate in Inmate Telephone Calls** - Your attorney's pre-cleared staff are permitted to communicate directly with you by

---

[3]    " Pre-cleared" when used with regard to an attorney's staff, or "pre-cleared staff member", refers to a co-counsel, paralegal, or an investigator who is actively assisting the inmate's attorney with the inmate's defense, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed - as evidenced by his/her signature - to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one (1) staff member, and the provisions of this document shall be fully applicable to each such staff member in his/her individual capacity. A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 5

telephone, provided that your attorney is physically present and participating in the legal call as well.

ii. **Your Initiation of Legally-Privileged Telephone Calls** - Your initiated telephone communications with your attorney or pre-cleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to you only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is your attorney. This privilege is contingent upon the following additional restrictions:

(1) Your attorney will not allow any nonpre-cleared person to communicate with you, or to take part in and/or listen to or overhear any communications with you.

(2) Your attorney must instruct his/her staff that:

(a) Your attorney and pre-cleared staff are the only persons allowed to engage in communications with you.

(b) Your attorney's staff (including the attorney) are not to patch through, forward, transmit, or send your communications to third parties.

(3) No telephone call/communication, or portion thereof, except as specifically authorized by this document:

(a) Is to be overheard by a third party[4].

(b) Will be patched through, or in any manner forwarded or transmitted to a third party.

(c) Shall be divulged in any manner to a third party, except as otherwise provided in Section 2d.

---

[4]    For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when acting in connection with their official duties. This section does not allow monitoring of attorney/client privileged communications.

*"Sensitive Limited Official Use Only"*

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 6

      (d)      Shall be in any manner recorded or preserved.[5] Your attorney may make written notes of attorney/client privileged communications.

      (4) If USMS/BOP/DF, FBI or USA/SDNY determines that you have used or are using the opportunity to make a legal call to speak with another inmate or for any other non-legal reason that would circumvent the intent of the SAM, your ability to contact your attorney by telephone may be suspended or eliminated.

h.    **Your Attorney May Provide You Documents** - Your attorney may provide you with or review with you, documents related to any post-conviction proceedings so long as any of the foregoing documents are translated, if translation is necessary, by a pre-cleared translator. Any document not related to such proceedings must be sent to you via general correspondence and will be subject to the mail provisions of subparagraphs 2i and 3g. Documents previously reviewed and cleared for receipt by you, and already in your possession at the outset of the visit, may be discussed or reviewed by you and your attorney during the visit.

    i.    None of the materials provided may include inflammatory materials, materials inciting to violence or military training materials, or materials that may be used to pass messages from inmate to inmate, unless such materials have been pre-cleared by the USA/SDNY and the FBI.

    ii.    The USA/SDNY may authorize additional documents to be presented to you. If any document not listed or described above needs to be transmitted to you, consent for the transmission of the document can be obtained from the USA/SDNY without the need to formally seek approval for an amendment to the SAM.

i.    **Legal Mail** - Your attorney may not send, communicate, distribute, or divulge your mail, or any portion of its contents (legal or otherwise) to third parties.[6]

    i.    In signing the SAM acknowledgment document, your attorney and pre-cleared staff will acknowledge the restriction that only your case-related documents will be

---

[5]    Except by USMS/BOP/DF/FBI/DOJ or other duly authorized federal authorities. This section does not allow monitoring of attorney/client privileged communications.

[6]    Legal mail is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney of record. All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail."

---

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 7

presented to you, and that neither your attorney nor his/her staff will forward third-party mail to or from you.

3. **Inmate's Non-Legal Contacts**:

   a. **Non-Legal Telephone Contacts**:

      i. You are limited to non-legal telephone calls with your immediate family members.[7]

      ii. The quantity and duration of your non-legal telephone calls with your immediate family members shall be set by the USMS/BOP/DF, with a minimum of one (1) call per month, unless otherwise agreed upon by USMS/BOP/DF, FBI and USA/SDNY to allow more calls.

   b. **Rules for Telephone Calls** - For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

      i. Is to be overheard by a third party.[8]

      ii. Is to be patched through, or in any manner forwarded or transmitted, to a third party.

      iii. Shall be divulged in any manner to a third party.

      iv. Shall be in any manner recorded or preserved.[9]

All telephone calls shall be in English unless a fluent FBI, USMS/BOP/DF approved translator is available to contemporaneously monitor the telephone call. Arranging for a translator may require at least fourteen (14) days advance notice.

---

[7] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF/FBI-verifiable), spouse, natural children, parents, and siblings.

[8] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when monitoring in connection with their official duties. This section does not allow monitoring of attorney/client communications.

[9] Except by USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities.

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 8

  c.   **Telephone SAM Restriction Notifications** - For all non-legal telephone calls to your immediate family member(s):

      i. The USMS/BOP/DF shall inform you of the telephone SAM restrictions prior to each telephone call.

      ii. The USMS/BOP/DF shall verbally inform your immediate family member(s) on the opposite end of your telephone communication of the telephone SAM. The USMS/BOP/DF is only required to notify your communication recipient in English.

      iii. The USMS/BOP/DF shall document each such telephone notification.

  d.   **Family Call Monitoring** - All calls with your immediate family member(s) shall be:

      i. Contemporaneously monitored by the FBI.

      ii. Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

      iii. A copy of each inmate/immediate family member telephone call recording shall be provided by USMS/BOP/DF on a single, individual, cassette tape (per call) for forwarding to the FBI. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

  e.   **Improper Communications** - If telephone call monitoring or analysis reveals that any call or portion of a call involving you contains any indication of a discussion of illegal activity, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, you shall not be permitted any further calls to your immediate family members for a period of time to be determined by USMS/BOP/DF. If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

  f.   **Non-legal Visits** -

      i. **Limited Visitors** - You shall be permitted to visit with only your immediate family members. The visitor's identity and family member relationship to you will be confirmed by the USMS/BOP/DF and FBI in advance.

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 9

    ii. **English Requirement** - All communications during your non-legal visits will be in English unless a fluent FBI/USMS/BOP/DF-approved translator is readily available to contemporaneously monitor the communication/visit.

    iii. **Visit Criteria** - All non-legal visits will be:

       (1) Contemporaneously monitored by USMS/BOP/DF and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

       (2) Permitted only with a minimum of fourteen (14) calendar days advance written notice to the USMS/BOP/DF facility where you are housed.

       (3) Without physical contact. All such meetings shall be noncontact to protect against harm to visitors or staff should you attempt to take hostages.

       (4) Limited to one (1) adult visitor at a time. However, FBI-verified children of yours may visit with a pre-approved adult visitor.

  g. **Non-legal Mail** - Any mail not clearly and properly addressed to/from your attorney and marked "Privileged" (incoming or outgoing). Non-legal mail is limited to only your immediate family, U. S. courts, federal judges, U. S. Attorneys' Offices, members of U. S. Congress, BOP, other federal law enforcement entities, and, if you are a citizen of a foreign country, a verified consular representative of that country.

    i. **General correspondence with limitations:** correspondence is restricted to only immediate family members. Volume and frequency of outgoing general correspondence with immediate family members only is limited to three (3) pieces of paper (not larger than 8 1/2 x 11), double-sided, once per calendar week to a single recipient. The identity and family member relationship to you will be confirmed by USMS/BOP/DF and FBI.

    ii. **General correspondence without limitations:** correspondence to U. S. courts, federal judges, U. S. Attorneys' Offices, members of U. S. Congress, BOP, and other federal law enforcement entities. There is no volume nor frequency limitation on mail to/from these parties unless there is evidence of abuse of these privileges, threatening correspondence is detected, circumvention of the SAM is detected, or the quantity to be processed becomes unreasonable to the extent that efficient processing

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 10

to protect the security, good order or discipline of the institution, the public or national security may be jeopardized.

   iii. All non-legal mail will be:

     (1) **Copied** - shall be copied (including the surface of the envelope) by the warden, or his/her designee, of the facility in which you are housed.

     (2) **Forwarded** - shall be forwarded, in copy form, to the location designated by the FBI.

     (3) **Analyzed** - After government analysis and approval, if appropriate, your incoming/outgoing non-legal mail will be forwarded: 1) to the USMS/BOP/DF for delivery to you (incoming); or 2) directly to the addressee (outgoing).

The Federal Government will forward your non-legal mail to the USMS/BOP/DF for delivery to you or directly to the addressee after review and analysis period of:

     (a)    A reasonable time not to exceed fourteen (14) business days for mail which is written entirely in the English language.

     (b)    A reasonable time not to exceed sixty (60) business days for any mail which includes writing in any language other than English, to allow for translation.

     (c)    A reasonable time not to exceed sixty (60) business days for any mail where the Federal Government has reasonable suspicion to believe that a code was used, to allow for decoding.

   iv. **Mail Seizure** - If outgoing/incoming mail is determined by USMS/BOP/DF or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to the FBI for appropriate action. You shall be notified in writing of the seizure of any mail.

4. **Communication with News Media**: You will not be permitted to talk with, meet with, correspond with, or otherwise communicate with any member, or representative, of the news media, in person, by telephone, by furnishing a recorded message, through the mail, through your attorney, through a third party, or otherwise.

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 11

5. **No Group Prayer:**

   a.  You shall not be allowed to engage in group prayer with other inmates.

   b.  If an FBI and/or USMS/BOP/DF approved religious representative is to be present for prayer with you, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the USMS/BOP/DF.

6. **No Communal Cells and No Communication Between Cells:**

   a.  You shall not be allowed to share a cell with another inmate.

   b.  You shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmates by making statements audible to other inmates or by sending notes to other inmates.

7. **Recording Conversations Between Cells:**

   a.  The USMS/BOP/DF/FBI are hereby authorized to place microphones in the hallways and elsewhere outside your cell to record any statements made by you to other inmates or staff.

   b.  The Notice of SAM given to you shall notify you that you are subject to such recording.

8. **Cellblock Procedures:**

   a.  You shall be kept separated from other inmates as much as possible while in the cellblock area.

   b.  You shall be limited, within USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

9. **Commissary Privileges:**  The USMS/BOP/DF shall restrict access to commissary items or any other objects determined by USMS/BOP/DF to be capable of being converted into dangerous instruments.

10. **Access to Mass Communications:**  To prevent you from receiving and acting upon critically-timed information or information coded in a potentially undetectable manner, your access to materials of mass communication is restricted as follows:

---

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 12

a.  **Periodicals/Newspapers** -

i.  You may have access to publications determined not to facilitate criminal activity or be detrimental to national security; the security, good order or discipline of the institution; or the protection of the public. This determination is to be made by the FBI, in consultation with the USMS/BOP/DF and USA/SDNY.

ii.  Sections of the periodical/newspaper which offer a forum for information to be passed by unknown and/or unverified individuals, including but not limited to classified advertisements and letters to the editor, should be removed from the periodicals/newspapers prior to distribution to you.

iii.  You shall then have access to the remaining portions of the periodicals/newspapers in accordance with USMS/BOP/DF policy, after a delay of at least thirty (30) days. In accordance with subparagraph 3g above, the FBI will review the remaining portions of the publications prior to distribution to you and be responsible for any translations required.

iv.  In order to avoid passing messages/information from inmate to inmate, you shall not be allowed to share the publication(s) with any other inmates.

b.  **Television and Radio** - You are restricted from access to channels/stations which primarily broadcast news, but are permitted access to all other radio and television channels/stations, in accordance with USMS/BOP/DF policies.

c.  **Termination or Limitation** - If the USMS/BOP/DF determines that the mass communications are being used to send messages to you relating to the furtherance of terrorist activities, your access may be limited or terminated for a period of time to be determined by the USMS/BOP/DF.

11. **Frequent Cell Searches**: The USMS/BOP/DF is hereby directed to search your cell frequently and to take appropriate disciplinary action for any infractions.

12. **Transfer of Custody**: In the event that you are transferred to or from the custody of the USMS, BOP or any other DF, the SAM provisions authorized for you will continue in effect, without need for any additional DOJ authorization.

Notification of Restrictions
Inmate Nidal Ayyad, Register Number 16917-050
March 29, 2006
Page 13


These conditions are imposed by the Bureau of Prisons at the request of the Attorney General, through his designated agent, the Assistant Attorney General.


Received:   March 3*0*, 2006
(Thirteen pages)

Refusal to Sign

Nidal Ayyad
Register Number 16917-050

*"Sensitive Limited Official Use Only"*

CERTIFICATE OF SERVICE/MAILING
———

I certify that on June 23rd, 2006, I mailed an original and two copies of "Second Amended Prisoner Complaint" and "Exhibit A1" to the "office of the clerk" at U.S. District Court

901 - 19th ST. Room A105
Denver, Co 80294-3589

Also, certify I sent one copy of the same to:
Mr. William Pharo, Assistant U.S. Attorney
1225 17th ST. Suite 700
Denver, Co 80202

All mail was handed to ADX staff to be processed with paid First Class U.S. mail postage.

Respectfully   Submitted by,

NIDAL A. AYYAD
Reg. No. 16917-050
Florence, ADX
CO, 81226