IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-02342-WYD-MJW

NIDAL A. AYYAD,

      Plaintiff,

v.

ALBERTO GONZALES, U.S. Attorney General, et al.,

      Defendants.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

      THIS MATTER came before the Court on a hearing on January 2, 2008, on

Plaintiff's Opposed Motion for Preliminary Injunction or Protective Order filed December

3, 2007.  A response to the motion was filed on December 20, 2007, and a reply was

filed on December 28, 2007.  For the reasons stated on the record at the hearing and in

this Order, Plaintiff's motion is granted.

II.    <u>BACKGROUND</u>

      Plaintiff, who was originally pro se but is now represented by counsel (the

Student Law Office of the University of Denver) was convicted in the United States

District Court for the Southern District of New York ["SDNY"] on charges related to the

1993 World Trade Center bombing.  Plaintiff's Second Amended Complaint challenges

the constitutionality of certain Special Administrative Measures ["SAMs"] instituted

against him.

The preliminary injunction motion asserts that Plaintiff, who is currently incarcerated at ADX, was originally housed in the open population enjoying all the privileges and rights offered to other inmates. On February 25, 2005, NBC broadcasted an investigative news report related to correspondence between Plaintiff, his co-defendants (who are also housed at ADX), and certain prisoners in Spain. According to Plaintiff, the news report included "speculative allegations" that the correspondence was violent in nature. Shortly after this news report, Plaintiff asserts that he saw the Attorney General commenting on the report and promising to investigate and take action.

On March 18, 2005, the Attorney General imposed SAMs on Plaintiff which Plaintiff alleges deprived him without a hearing of numerous rights and privileges. (Second Am. Compl. at 8-9.) In March 2006 the SAMs were extended for another year with no hearing or opportunity to challenge them. The new SAMs added further restrictions. Plaintiff asserts that he was never charged with any misconduct, and his conduct has been clean while at ADX. Plaintiff alleges that the SAMs violate the First Amendment, Substantive and Procedural Due Process, Equal Protection, the Fourth Amendment and the Sixth Amendment.

Plaintiff, through his counsel the Student Law Office of University of Denver ["SLO"], moves for a preliminary injunction or protective order in connection with Defendants' refusal to allow SAMs clearance for the student attorneys who have entered notices of appearance in this case and who have been approved to appear in this case per my oral ruling on January 3, 2008, as affirmed in this Order. Thus, the

students are unable to meet and confer with Plaintiff at the prison.  The motion states that the supervising attorneys in the SLO are not allowed to provide representation to clients unless its law students are allowed to appear and litigate those cases in the same manner that an attorney would.  While three of the SLO professors/attorneys have been given clearance under the SAMs, the student lawyers have not.

The motion further asserts that Interim Clinical Director Laura Rovner had several conversations with Assistant United States Attorney ["AUSA"] David Raskin of the SDNY in which she requested SAMs clearance for the students, and also sent a letter to him in which she described the nature and degree of supervision of the student attorneys in the SLO.  (*See* Ex. 1, Mot. for Prelim. Inj.)  Recently, Professor Rovner was informed that SAMs clearance would not be provided to law students.  The reason given for this denial was that law students are not like attorneys, paralegals or investigators (who the SAMs permit prisoners to communicate with) who "have a lot to lose" if they violate SAM restrictions.  (Decl. of Professor Rovner, Ex. 2 to Mot. for Prelim. Inj.)

Plaintiff asserts that the denial to the law students of clearance under the SAMs was done in an arbitrary and capricious manner and in violation of the First Amendment and Due Process Clause.  If the law students cannot receive clearance, the SLO will have to withdraw from this case and the case of *Abouhalima v. Gonzales*, No. 05-cv-02653-REB-MEH (D. Colo.).  Plaintiff seeks an injunction so that the SLO law students can receive clearance under the SAMs to represent him.

Defendants assert in response that between 2002 and 2004, while incarcerated, Plaintiff and two of his co-conspirators wrote over 90 letters to Islamic extremists, including inmates who were members of a Spanish terrorist cell with links to terrorists suspected in the March 11, 2004 attacks on Madrid commuter trains. On March 18, 2005, at the direction of the Attorney General, SAMs were implemented against Plaintiff pursuant to 28 C.F.R. § 501.3. The SAMs were extended in 2006 and 2007 for a period of one year. The SAMs restrict Plaintiff's ability to communicate with others.

Plaintiff's legal communications are limited to his attorneys and pre-cleared paralegals who must sign affirmations acknowledging the SAMs and agreeing that they will not forward third-party messages to or from Plaintiff. The U.S. Attorney for the SDNY is the component of the Department of Justice ["DOJ"] with authority to permit attorney and paralegal access to Plaintiff.

On October 1, 2007, Daniel Manville entered his appearance as Plaintiff's attorney. He (as well as Laura Rovner and Raja Raghunath) are attorneys/professors for the SLO and supervise law students who seek to appear in federal court. Defendants note that Plaintiff has been authorized to have visitation privileges with attorneys Manville, Rovner, and Raghunath. However, the US Attorney for the SDNY, in consultation with the DOJ, denied Rovner's request to allow the law students direct access to Plaintiff. This request was denied because the SAMs do not provide for student access. It was further determined that the law students did not have a sufficient level of accountability and incentive to abide by the SAMs because they were

not licensed attorneys.  Additionally, it was decided that the authorization for three attorneys was sufficient to allow Plaintiff to prosecute his case.

The decision was communicated to Professor Rovner in November 2007.  She was advised that if a factual issue could be identified that made it necessary for the law students to have direct access to Plaintiff, the decision would be revisited.  She did not make further contact on this issue with the U.S. Attorney for the SDNY or the DOJ.

Defendants assert that Plaintiff's motion for preliminary injunction should be denied because Plaintiff cannot show the required elements of a preliminary injunction are satisfied.  Defendants also argue that the motion is not properly before the Court.

I address below the legal standard for a preliminary injunction and whether the elements for an injunction have been satisfied by Plaintiff.  I first address, however, whether the preliminary injunction motion is properly before the Court.

III.    WHETHER THE PRELIMINARY INJUNCTION MOTION IS PROPERLY
        BEFORE THE COURT

Defendants argue that the motion is not properly before the Court as it is essentially asserting a claim that is not contained in the pending complaint.  Moreover, it is argued that Plaintiff has failed to exhaust administrative remedies on this claim under the Prison Litigation Reform Act of 1995 ["PLRA"].  Defendants argue that futility is not an exception to exhaustion.  It is also argued that requiring an inmate to exhaust remedies prior to seeking a preliminary injunction is consistent with the PLRA.  Had Congress intended for inmates to be able to bypass exhaustion requirements through seeking injunctive relief, it would have built such a provision into the statute.

I reject Defendants' arguments.  First, I find that a plaintiff who is incarcerated should be able to raise at any time the fact that he is being denied access to counsel, without having pled this in the complaint.  Further, I note that the Second Amended Complaint does challenge the constitutionality of the SAMs, as applied to Plaintiff, which arguably would encompass this claim arising under the SAMs relating to access to the law students who are appearing on Plaintiff's behalf in this case.

Second, I find that exhaustion of administrative remedies is not required because the motion does not deal with prison conditions, as required by the PLRA.  42 U.S.C. § 1997e(a) (2007).  In this case, the SAMS, as applied, are denying law students the ability to see Plaintiff at the prison.  This is something that is occurring outside the prison gates and is not a condition of prison life.  It does not relate to Plaintiff's conditions of confinement or even more broadly to prison life.  The fact that the effect is being felt in prison (as Plaintiff is not able to meet with the law students) is not sufficient, in my opinion, to require exhaustion.  *See Almahdi v. Ridge*, No. 04-3120, 2006 WL 3051791, at *2 (3rd Cir. 2006) (a prisoner's placement on a watch list by the Department of Homeland Security "occurred outside the prison gates" and was not a prison condition, even though the consequences of the classification were); *see also Lee v. U.S. Dep't of Justice*, 235 F.R.D. 274, 290 (W.D. Pa. 2006);  *Battle v. Whetsel*, No. CIV-05-0019-HE, 2006 WL 2010766, at *3 n.4 (W.D. Okla. July 17, 2006).

Finally, as Magistrate Judge Watanabe noted in a prior Recommendation which was affirmed by me on January 30, 2007, Plaintiff was previously advised by the Regional Director that the SAMs "are within the jurisdiction of the United States

Attorney General and the Bureau of Prisons has no authority to remove or amend the restrictions imposed." Recommendation of September 29, 2006, at 8 (citing Pl.'s Resp. to Defs.' Mot. to Dismiss for Failure to Exhaust at 8). Since the purpose of exhaustion is to afford the prison time and opportunity to address the complaint, *Kikumura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006), exhaustion would appear to be a waste of resources since the BOP has no authority to address the SAMS.

Based on the foregoing, I find that exhaustion of administrative remedies is not required. I further find that the motion for preliminary injunction is properly before the Court.

IV.    WHETHER A PRELIMINARY INJUNCTION SHOULD BE GRANTED

     A.    Standard for Issuance of a Preliminary Injunction

"A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). The right to relief must be "clear and unequivocal." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

"To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). "'If the plaintiff can establish that the latter three requirements tip strongly in his favor, the test is modified, and the plaintiff may meet the requirement for

showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" *Flowers*, 321 F.3d at 1255-56 (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

However, "when a preliminary injunction would alter the status quo, . . . the movant bears a heightened burden and 'must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms.'" *Urban Gorilla*, 500 F.3d at 1226 (quotation omitted). As to that type of injunction, the court must more closely scrutinize the injunction "to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O'Centro Espirita Beneficiente Uniao de Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). Movants seeking such an injunction are not entitled to rely on the modified likelihood-of-success-on-the-merits standard. *Id.* at 976.

B. <u>Analysis of Preliminary Injunction Sought by Plaintiff</u>

I first note that this may well be a disfavored type of preliminary injunction, *i.e.*, it appears that it would disturb the status quo. "[T]he status quo is 'the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.* 269 F.3d 1149, 1155 (10th Cir. 2001). Under that definition, the status quo appears to be the fact that the SAMs do not expressly authorize law students to visit the Plaintiff and, as applied, have been interpreted to deny the law students clearance to visit Plaintiff. The relief sought by Plaintiff would alter that status quo.

Accordingly, it appears that this case is subject to the heightened burden. For the reasons stated below, I find that Plaintiff has met the required showing for a preliminary injunction, even under the heightened standard, if applicable.

1.     Likelihood of Success on the Merits

The preliminary injunction motion asserts that the denial of SAMs clearance to the law students was done in an arbitrary and capricious manner and in violation of the First Amendment and the Due Process Clause. Further, the motion asserts that if the law students cannot receive SAMs clearance, the SLO will have to withdraw from this case and *Abouhalima v. Gonzales, et al.*, No. 05-cv-02653-REB-MEH (D. Colo.), a case which Plaintiff seeks to consolidate with this case.

Turning to my analysis, I first address whether I must consider the merits of the claims in the Second Amended Complaint or the collateral issue in the preliminary injunction motion regarding the alleged denial of access to the courts. I find that the issue to be considered on the merits is that raised in the preliminary injunction motion—whether the SAMs, as applied, which prohibit Plaintiff from visiting with the law students who represent him in this case, violate Plaintiff's constitutional rights.

Turning to the merits of the that claim, I first note that the Supreme Court has stated that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration."

*Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). However, "prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell*, 441 U.S. at 545. "'There is no iron curtain drawn between the Constitution and the prisons of this country.'" *Id.* (quotation omitted).

Under the First Amendment, a prison regulation or policy limiting speech must be upheld if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). In determining whether a restriction is "reasonably related to legitimate penological interests," four factors are assessed: *First*, whether the governmental objective is legitimate and neutral, and the policy is rationally related to that objective; *second*, whether there are alternative means of exercising the asserted right; *third*, what impact accommodation of the right will have on guards and other inmates; and *fourth*, whether there are alternatives to the policy that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Thornburgh v. Abbott,* 490 U.S. 401, 414-19 (1989); *Turner*, 482 U.S. at 89-914.

In assessing these factors, the Supreme Court "has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate relations between prisons and the outside world." *Thornburgh*, 490 U.S. at 408. The burden is on the prisoner to show that the regulation is unreasonable. *See Covino v. Patrissi*, 967 F.2d 73, 79 (2nd Cir. 1992).

While Plaintiff characterized this as a First Amendment issue, I find that this is a due process issue involving the right of access to the courts. The key case on this

issue is *Procunier v. Martinez*, 416 U.S. 396 (1974), *overruled on other grounds*, 490

U.S. 401 (1987).  *Procunier* was a class action by inmates challenging prisoner mail

censorship regulations and a ban against the use of paraprofessionals and law

students to conduct attorney-client interviews with inmates.  While the Supreme Court

analyzed the mail censorship regulations under the First Amendment, it looked at the

ban against law students under the due process clause.

Specifically, the Supreme Court upheld the district court's enjoinment of

enforcement of that rule, stating:

> By restricting access to prisoners to members of the bar and licensed
> private investigators, this regulation imposed an absolute ban on the use
> by attorneys of law students and legal paraprofessionals to interview
> inmate clients. In fact, attorneys could not even delegate to such persons
> the task of obtaining prisoners' signatures on legal documents. The
> District Court reasoned that this rule constituted an unjustifiable restriction
> on the right of access to the courts. We agree.

> The constitutional guarantee of due process of law has as a corollary the
> requirement that prisoners be afforded access to the courts in order to
> challenge unlawful convictions and to seek redress for violations of their
> constitutional rights. This means that inmates must have a reasonable
> opportunity to seek and receive the assistance of attorneys. Regulations
> and practices that unjustifiably obstruct the availability of professional
> representation or other aspects of the right of access to the courts are
> invalid.

*Id*. at 419.

Other courts have also characterized this as a due process issue involving

access to courts.  Thus, in *Crusoe v. DeRobertis*, 714 F.2d 752 (7th Cir. 1983), the

court held that a claim that the prison refused to permit a paraprofessional employed by

an attorney from entering the prison did not violate the First Amendment as "the First

Amendment does not provide for a right of access to prison facilities."  *Id*. at 755.

Instead, the court held that the claim was "more cognizable under the Due Process right to access to the courts", as "the Due Process Clauses provide that a prisoner must be allowed 'meaningful access' to the courts." *Id.* *Crusoe* further stated:

> This right of access implies that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid.' *Procunier v. Martinez, supra,* at 417. . . . As such, prison regulations which arbitrarily prohibit the use of jailhouse lawyers, . . . or law students and paralegals . . . violate the right of access to the courts and are, therefore, constitutionally infirm.

*Id.* at 756 (internal quotation omitted).

*Crusoe* held, however, that "'this does not mean that paralegals must automatically be admitted into penal institutions. . . .'" *Id.* (quotation omitted). "'The extent to which [access to the courts] is hardened by a particular regulation . . . must be weighed against the legitimate interests of penal administration and the proper regard that judges should give to the expertise and discretionary authority of correctional officials.'" *Id.* "Therefore, a prison warden may prohibit a prisoner from communicating with counsel through a para-professional where the para-professional poses 'some colorable threat to security. . . .'" *Id.* (quotation omitted). "Such a determination must be based on the sound judgment of the prison administrator and must not be 'arbitrary or patently unreasonable.'" *Id.* (quotation omitted).

*Crusoe* found no violation of due process under the circumstances of that case. This was because "prison order and security are legitimate governmental interests" and the paraprofessional's actions in that case "created a colorable threat to that order and security." *Id.* at 756-57. The paraprofessional "had little or no respect for prison rules

and procedures", and "displayed an attitude of hostility toward the prison and prison officials. . . . " *Id.* at 757.  *Crusoe* concluded, "[i]n light of the deference which must be given to the decision of the prison administrator. . ., we believe [the paraprofessional] was properly denied access" to the prison.  *Id.*  This decision was also supported by the fact that the prisoner had access to the paraprofessional by letter and phone and could receive face-to-face visits from his attorney.  Thus, *Crusoe* found that the prisoner's access to the courts was not seriously impaired by the order.  *Id.*[1]

As to the test that must be looked at in connection with the due process issue, it appears to be the same test as the First Amendment.  In other words, "[w]hen a prison limits access to the courts by restricting an inmate's access to legal resources, 'we must determine whether the prison's policy is reasonably related to legitimate penological interests".  *Penrod v. Zavaras*, 94 F.3d 1399, 1403-04 (10th Cir. 1996).

Turning to the regulation (SAMs) at issue, I must determine, then, whether the SAMs restriction (which as applied restricts law students from the prison) is reasonably related to legitimate penological interests, looking at the four *Turner* factors.  The first factor is whether the governmental objective is legitimate and neutral, and the policy is rationally related to that objective.  I find that Defendants have shown that the

---

[1] Other cases on this issue include *Abu-Jamal v. Price*, 154 F.3d 128, 136-37 (3rd Cir. 1998) (claim that prisoner was being denied constitutional access to courts by restriction of paralegal visits was not meritorious when the restriction was not absolute but only asked for verification that the paralegals were employed by an attorney and plaintiff did not demonstrate that this restriction delayed or hindered his appeal); *Souza v. Travisono*, 498 F.2d 1120, 1123-24 (1st Cir. 1974) (policy restricting access of inmates to law students was invalid under *Procunier* under the Sixth and Fourteenth Amendments); *Giarratano v. Bass*, 596 F. Supp. 818, 819-20 (E.D. Va. 1984) (legal correspondence of paralegals should be given the same status as protected attorney legal correspondence—"[t]he thrust of *Procunier* is to ensure reasonable access to attorneys *and their agents* in order to afford adequate counsel to indigent prisoners").

governmental objective is legitimate.  Defendants cite the Attorney General's statement that based upon "Ayyad's proclivity for violence * * * there is a substantial risk that his communications or contacts with persons could result in death or serious bodily injury to persons."  Resp. to Mot. for Prelim. Inj. at 7.

However, I find that the Government has not shown that the SAMs policy is neutral and rationally related to that objective.  The Government argues that limiting Plaintiff's communications to licensed attorneys will help ensure that he does not exchange messages with other terrorists.  It further argues that the law students could be more susceptible to making such communications, intentionally or inadvertently, because of their lack of experience in representing ADX inmates.  It concludes that this interest is directly related to the interest in security that justifies the denial of direct access.  I am not convinced for the reasons set forth below.

The SAMs allow pre-cleared paralegals to receive clearance, but not law students.  (*See* Ex. 3 p. 5, Mot. for Prelim. Inj.)  I find no logical distinction between paralegals and law students.  While paralegals are licensed and law students are not, law students have just as much to lose (if not more) as paralegals.  They can be kicked out of law school and/or denied a law license for violations of same.  They can also be prosecuted for their violation of SAMs.  *See United States v. Sattar*, 314 F. Supp. 2d 279 (S.D.N.Y. 2004).  It is arbitrary and irrational to allow paralegals to visit Plaintiff but not law students (who are being supervised and will be seeking licensure).  Further, the case law discussed above makes clear that a prison cannot impose a ban on law students without some valid justification, as that is arbitrary and violates due process.

Here, Defendants have not shown or even argued that the students pose a colorable security threat or that some other valid justification exists for its ban.

Further, courts have held that where there is a regulation permitting law students to serve as counsel, they act as a lawyer and bear the same ethical responsibilities towards their clients as a lawyer would. *In Re Hatcher*, 150 F.3d 631, 636 (7th Cir. 1998). In this Court, General Order 2005-3 allows law students, under certain conditions, to appear in a matter on behalf of any party who has consented in writing. The law students at issue have been authorized by me to appear on behalf of Plaintiff. As such, they are essentially acting as counsel of record. The SAMs state that counsel of record will be allowed access to Plaintiff. (Ex. 3, Mot. for Prelim. Inj.) It is arbitrary and capricious to deny the law students access to Plaintiff under these conditions.

The second factor is whether there are alternative means of exercising the asserted right. While the Government argues that there are alternative means, as Plaintiff has access to the three professors of the SLO who are attorneys, Plaintiff asserts that this is not true. It appears from Plaintiff's motion that the practice of the SLO prohibits the professors from litigating Plaintiff's claims. Instead, the claims must be litigated by the students (with the supervision of the SLO professors/attorneys). Thus, if no access is provided to the students, there can be no representation by the SLO. If the SLO is forced to withdraw, Plaintiff would be without counsel of his choice, and it would be difficult (if not impossible) to find substitute counsel.[2]

---

[2]  I further note that the the offer by the DOJ that if the SLO is able to identify particular matters that are necessary for the students to discuss directly with Plaintiff, the DOJ may reconsider (or offer "limited interaction" with Plaintiff) appears to offend the Rules of Professional Responsibility. The SLO should

Third, I must address what impact accommodation of the right will have on guards and other inmates. I agree with Plaintiff that student attorneys who meet with Plaintiff under the supervision of an SLO faculty member and under a protective order of this Court would have no greater impact on third parties than Plaintiff meeting with paralegals or attorneys of record given clearance pursuant to the SAMs.

Finally, I must address whether there are alternatives to the policy that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. While the Government argues that the attorneys have access to the Plaintiff and can disclose the content of communications to the law students, this is unworkable as previously discussed. Defendants also argue that a criminal prosecution or civil enforcement of a protective order on the student attorneys would carry a greater than *de minimis* additional burden, since they "are not really subject to disciplinary proceedings by the court," and therefore this weighs against issuance of the preliminary injunction. (Resp. to Mot. for Prelim. Inj. at 7-8.) I disagree. As Plaintiff notes, these are the same additional costs that would be incurred if a paralegal, investigator or attorney violated the SAMs. Further, student attorneys are subject to the same contempt proceeding as anyone else who violates a protective order.

In short, I find that Plaintiff has shown a likelihood of success on the merits of the due process right of access to the courts claim, even under the heightened burden.

---

not be required to disclose to the DOJ—which serves as opposing counsel in this case—information and issues related to its representation of Plaintiff (and potential client confidences).

2.    Irreparable Injury

Plaintiff asserts that he will suffer irreparable harm if the injunction is not granted allowing the law students access to him since the SLO will be required to withdraw its representation.  If the law students are not given access to Plaintiff and are thus unable to provide representation to him, it is argued that the SLO will have to withdraw from this case and the case of *Abouhalima v. Gonzales, et al.*, No. 05-cv-02653-REB-MEH (D. Colo.).  Defendants argue that there is no irreparable harm since Plaintiff is allowed to communicate directly with the attorneys from the SLO and the attorneys can disclose information they learn from Plaintiff to the law students.  I do not agree with Defendants' position.

As Plaintiff has shown, the SLO was not established so that its faculty/attorneys could litigate cases under the auspices of the University of Denver College of Law. Rather, the SLO is a law school clinic in which students receive academic credit.  The student attorneys thus handle every aspect of the cases to which they are assigned: client and witness interviewing, written discovery, depositions, motions, and trials.  The professors have considerable experience, which will be used to supervise the law students to ensure that all the requirement of SAMs are followed.

Thus, if the law students are not given access to Plaintiff, the SLO will likely not be able to represent Plaintiff.  He would then be denied the counsel of his choice, including access to the SLO professors with a considerable amount of experience. Further, he may actually be denied any counsel as it is often difficult to obtain *pro bono* counsel to handle cases on behalf of prisoners.  I also note that the Supreme Court has

recognized that a First Amendment violation gives rise to irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). I believe the same analysis would apply to any constitutional violation, particularly a violation involving right of access to the courts. Accordingly, I find that Plaintiff has demonstrated irreparable injury if a preliminary injunction is not issued.

       3.   <u>Balancing of Harm</u>

Defendants argue that Plaintiff cannot show that his threatened injury outweighs the harm that a preliminary injunction may cause the Defendants. First, Defendants argue that there really is no threatened injury because the SLO will be able to represent Plaintiff despite the fact that the students cannot communicate with him directly. Second, it is argued that Defendants will be harmed because of the increased possibility that Plaintiff will be able to communicate with terrorists through the law students. Allowing Plaintiff access to three attorneys as well as two law students would unjustifiably risk further communications that could be a danger to the public.

I find that the balancing of the harm strongly weighs in favor of the injunction. First, I have already found that there is irreparable harm, contrary to Defendants' argument. Second, as discussed previously, Plaintiff will not be seen by the three attorney/professors of the SLO but only by the law students. Thus, the number of persons he is allowed access to is not as great as Defendants claim.

I also disagree with Defendants that they will be harmed by allowing Plaintiff access to the law students because of the increased possibility that such communications will be transmitted to terrorists. I see no distinction, nor has

-18-

Defendants shown any, between paralegals and investigators who are allowed to see inmates under the SAMs and law students who are not. In other words, Defendants have not shown that law students somehow pose more of a threat in allowing their communications with Plaintiff to be transmitted to terrorists than do paralegals.

Further, I agree with Plaintiff that Defendants will suffer little, if any harm, if this Court grants the injunction. There are procedures contained in the SAMs that impose severe repercussions on the law students if they communicate with people not involved with the SLO as to any discussions they have or information they obtain from the Plaintiff. First, the law students can be prosecuted for violating the terms of SAMs. Second, the Court can and will issue a protective order subjecting the law students to contempt proceedings if they violate the order limiting their sharing of any direct conversation with Plaintiff.[3] Third, a violation of the SAMs and protective order would most likely prevent the law students from ever getting admitted to practice law.

### 4.    Whether the Injunction is Adverse to the Public Interest

Finally, I find that Plaintiff has shown that the injunction is not adverse to the public interest. Instead, I find that the public interest will be served by allowing Plaintiff access to his counsel of choice, *i.e.,* the law students from the SLO. This will protect Plaintiff's due process rights to access to the court and counsel. *See Elam Construction, Inc. v. Reg'l Transp. Dist.,* 129 F.3d 1343, 1347 (10th Cir. 1997) ("The public interest . . . favors plaintiffs' assertion of their [constitutional] rights").

---

[3] At the hearing, the parties were directed to meet and confer and submit a proposed Protective Order.

While I agree with Defendants that they need to carefully monitor who sees the Plaintiff as he is a convicted terrorist, they have not shown that allowing the law students in this case to see Plaintiff is against the public interest. Further, they have not shown that the law students pose any colorable security risk to the prison, a condition often required by courts to allow a ban to be upheld. Indeed, issuing the injunction would support the public interest since *Procunier* and other cases hold that a prohibition against visitation by law students that is without valid justification is unconstitutional.

V.    CONCLUSION

Based upon the foregoing, I find that Plaintiff has shown that he is entitled to a preliminary injunction, even under a heightened standard of review. Accordingly, the motion for a preliminary injunction is granted. I also grant the motion to the extent it seeks a protective order. The parties were ordered to meet and confer and file a protective order by January 14, 2008. That deadline has been extended to January 22, 2008. Upon such filing, I will enter an appropriate protective order. Accordingly, it is

ORDERED that Plaintiff's Opposed Motion for Preliminary Injunction or Protective Order is **GRANTED**. The student lawyers in this case who have been approved to appear on behalf of Plaintiff shall be allowed clearance under the SAMs to visit Plaintiff in the same manner that an attorney of record would. The law student attorneys shall, however, comply with the requirements of the SAMs. It is

FURTHER ORDERED that Plaintiff's Motion to Expedite Proceedings in Regards to Plaintiff's Motion for Preliminary Injunction or Protective Order is **DENIED AS MOOT**.

Dated:  January 17, 2008

                                   BY THE COURT:


                                   s/ Wiley Y. Daniel
                                   Wiley Y. Daniel
                                   U. S. District Judge