UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-02342-WYD-MJW
(Consolidated with 05-cv-02653)

NIDAL A. AYYAD,

    Plaintiff,

v.

ALBERTO GONZALES, U.S. Attorney General, et al.,

    Defendants.

_____

**ORDER**
_____

THIS MATTER is before the Court on Defendants' Motion for Reconsideration of Order Granting Ayyad's Motion for Preliminary Injunction (filed January 29, 2008). Also before the Court is Plaintiffs' Motion to Strike Defendants' Declarations and Exhibits Attached to Their Motion for Reconsideration (filed February 12, 2008). By Order filed March 5, 2008, I granted Defendant's Motion for Emergency Stay of Order Granting Ayyad's Motion for Preliminary Injunction pending a ruling on Defendant's Motion for Reconsideration.

By way of background, on January 17, 2008, I issued an Order granting Plaintiff Ayyad's Opposed Motion for Preliminary Injunction. Through that Order, the Department of Justice ("DOJ") was ordered to allow clearance under the Special Administrative Measures ("SAMs") to visit Plaintiff in the same manner that an attorney of record would, subject to the requirement that the law students comply with the

requirements of the SAMs. Defendants now seek reconsideration of that Order.[1] Plaintiff seeks to strike the declarations and exhibits attached to the Motion for Reconsideration on the grounds that are improper as they do not contain newly discovered evidence that was unavailable when the response brief was filed, nor do the exhibits demonstrate that the Court committed a manifest error of law in granting the preliminary injunction.

I now turn to the standard relevant to the Motion for Reconsideration and then address the specific arguments made by Defendants. "'The Federal Rules of Civil Procedure recognize no motion for reconsideration.'" *Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995) (quotation and internal quotation marks omitted). The Court's treatment of a motion for reconsideration depends on whether the order at issue is a final order that disposes of all claims and all parties or is an interlocutory order. As Defendants note, the Order at issue was not a final order but was an interlocutory order. An interlocutory order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *Raytheon Constructors, Inc. v. Asarco Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003).

As noted by the Tenth Circuit, "[g]enerally, the 'law of the case' doctrine dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case." *Been v. O.K. Industries, Inc.*, 495 F.3d 1217, 1224 (10th Cir. 2007). However, "'the rule is a flexible one that allows courts to depart from erroneous

---

[1] The Order granting Ayyad's Motion for Preliminary Injunction also granted a request for a Protective Order. A Protective Order Regarding Law Students was filed February 20, 2008.

prior rulings, as the underlying policy of the rule is one of efficiency, not restraint of judicial power.'" *Id* (quotation omitted). "[T]he doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" *Id.* at 1225 (quotation omitted). District courts generally remain free to reconsider their earlier interlocutory orders. *Id.* A court can alter an interlocutory order even where the more stringent requirements applicable to a motion to alter or amend a final judgment under Rule 59(e) or a motion fo relief from judgment pursuant to Rule 60(b) are not satisfied. *Trujillo v. Bd. of Educ. of Albuquerque Public*, 212 Fed. Appx. 760, at *4 (10th Cir. 2007); *see also Nat. Business Brokers, Ltd. v. Jim Williamson Productions, Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000), *aff'd*, 16 Fed. Appx. 959 (10th Cir. 2001). "Courts have generally permitted a modification of the law of the case when substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous." *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).

In the case at hand, Defendants argue first that the Court erred in holding that Plaintiff was not required to exhaust administrative remedies under the PLRA. In my Order, I rejected this argument. I deny the motion seeking reconsideration of this argument. I do not find my rulings as to that portion of the Order to be erroneous. In addition to the other grounds noted in my Order, I find that exhaustion is not appropriate because the motion for a preliminary injunction is not an "action" that requires exhaustion within the meaning of the PLRA. *See* 42 U.S.C. § 1997e(a) (providing that "no action shall be brought with respect to prison conditions under . . . Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted"); *United States v. Hashmi*, No. 06 CR. 442(LAP), 2008 WL 216936, at *6-7 (S.D.N.Y. 2008)

(motions challenging the constitutionality of the SAMs were not an "action" within the meaning of the PLRA, thus, exhaustion of remedies was not required).[2]

Defendants also argue that I should reconsider my application of *Procunier*. In my Order granting Plaintiff's Motion for Preliminary Injunction, I found that Plaintiff showed a likelihood of success on the merits in connection with a due process claim involving the right of access to the courts under *Procunier v. Martinez*, 416 U.S. 396 (1974), *overruled on other grounds*, 490 U.S. 401 (1987). I found that Defendants had not shown or even argued that the students pose a colorable security threat or that some other valid justification exists for the law students' ban. Further, I found that it was arbitrary and capricious to deny the law students access to Plaintiff when the students were essentially acting as counsel of record subject to the same ethical responsibilities as attorneys.

Defendants now argue that the law student restriction is consistent with *Procunier* because the restriction is applied to an especially dangerous inmate. Defendants argue that the Court ignored this part of *Procunier* in making its ruling. I reject this argument, as the argument was not ignored. Indeed, I certainly acknowledge the fact that regulations such as SAMs such as the ones at issue may be enacted on the basis that an inmate is especially dangerous. This is consistent with my Order, which found that the governmental objective behind the SAMS was legitimate as it was based upon Plaintiff's proclivity for violence and the substantial risk that his

---

[2] The case cited by Defendant is not persuasive. Defendant cited *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) for the proposition that the PLRA imposes a mandatory exhaustion requirement on prisoners seeking judicial relief. That case, however, did not address a motion filed by a plaintiff once the case was already filed. Instead, it addressed failure to exhaust administrative remedies *before bring suit*. *Id*. I also reject Defendant's argument that *Hashmi* was wrongly decided.

communications or contacts with persons could result in death or serious bodily injuries to persons. Order of Jan. 17, 2008, at 13-14.

The problem I found was that Defendants did not show that the SAMs policy is neutral and rationally related to that objective. *Id.* at 14. That is because the SAMs allow precleared paralegals to have access to Plaintiff but not law students. I found that Defendants did not show that this distinction, which resulted in a blanket ban of law students, was rationally related to its legitimate government objective as I found that the government posited "no logical distinction between paralegals and law students". *Id.* I further found that it was arbitrary and irrational to allow precleared paralegals to visit Plaintiff but not law students. *Id.*; *see also Procunier*, 416 U.S. at 421 ("the fact that appellants have allowed some persons to conduct attorney-client interviews with prisoners does not mean that they are required to admit others, but the arbitrariness of the distinction between the two categories of law students does reveal the absence of any real justification for the sweeping prohibition" of the regulation at issue).

In so doing, I rejected arguments made by Defendants that the distinction was rational because law students are not licensed whereas paralegals are or that law students could be more susceptible to exchanging messages with other terrorists. Order of Jan. 17, 2008, at 14. I also rejected arguments that law students have "little to lose" as compared to licensed attorneys or paralegals. I concluded that "Defendants have not shown or even argued that the students pose a colorable security threat or that some other valid justification exists for its ban." *Id.* at 15. I find no error with those findings. I also reject Defendants' argument that I may have assumed in my prior ruling that paralegals may automatically meet with Plaintiff. My ruling was not based on that

assumption; instead, it was based on the fact that I found that no logical reason was given for the distinction between allowing paralegals, whether they were precleared or not, to visit Plaintiff, but not law students.

Defendants now, however, advance new arguments as to why there is a rational purpose in the SAMs' distinction between law students and paralegals. While not argued previously in connection with the preliminary injunction motion, I find that such arguments should be considered as this is an interlocutory decision that is subject to revision at any time. New arguments that Defendants advance include an argument that law students are still in training and under supervision by the professors, and that they consequently have had less opportunity to develop and show maturity and seasoned judgment in representing clients. Defendants argue that it is reasonable to assume that students in any field are more likely to make mistakes. Further, Defendants argue that law students are transient, in that their representation will end upon completion of the clinical course or at graduation. Adding new law students to the contact list with Plaintiff will increase the number of people with access to Plaintiff. Rotating in new law students will further increase the number of Plaintiff's contacts. It is argued that the government can rationally conclude that the greater the number of such contacts, the greater the chance of a violation of the SAMS, intentional or not.

Having considered such arguments, I find that Defendants have finally provided a rational basis for the distinction between allowing clearance for precleared paralegals but not for law students. I find the Government has a rational basis to believe that a person with minimal experience who is in training to be an attorney may not have the

judgment in representing clients that an attorney or a licensed paralegal would. Further, I find that the Government has a rational basis to believe that the turnover of law students in this case results in more contacts with Plaintiff and more of a chance for a violation of the SAMs to occur. Indeed, I note that one of the law students who originally entered an appearance on November 29, 2007, was replaced by another law student who entered an appearance on January 2, 2008. It is reasonable to assume that the law students on the case currently may finish their commitment to the Student Law Office shortly and also need to be replaced. Indeed, there may be multiple replacements of students during the pendency of this case.

Based on the foregoing, I find that Defendants have now shown that the SAMS restriction, which as applied restricts law students from contact with Plaintiff, is reasonably related to legitimate governmental objectives. This is because I find that Defendants have now shown a valid distinction between allowing precleared paralegals access to Plaintiff but not law students. Accordingly, I find that Plaintiff cannot shown a likelihood of success on the merits in connection with its due process claim of access to the courts. In so finding, I note that I am certainly displeased that Defendants did not make this showing earlier and that they required the filing of a motion to reconsider to make the required showing. Nonetheless, given the importance of the SAMs restrictions at issue and the fact that the Order granting Plaintiff's Motion for Preliminary Injunction was interlocutory, I find that I must reconsider my ruling on Plaintiff's Motion for Preliminary Injunction. While I initially granted the motion, I find that Order must be vacated and the Motion for Preliminary Injunction denied on the basis that Plaintiff did not demonstrate a likelihood of success on the merits as to his claims.

In making this finding, I note that Defendants argue that national security concerns warrant non-intervention and/or extra deference by the Court. While the national security concerns are not necessarily binding on the Court, I do find that they also weigh in favor of granting the Motion to Reconsider and vacating my Order granting the Motion for Preliminary Injunction. *See Citizens for Peace in Space v. City of Colorado Springs,* 477 F.3d 1212, 1221 (10th Cir. 2007) ("Courts have historically given special deference to other branches in matters relating to foreign affairs, international relations, and national security; even when constitutional rights are invoked by a plaintiff").

I now turn to Plaintiff's Motion to Strike Defendants' Declarations and Exhibits Attached to Their Motion for Reconsideration. I find that this motion must be denied. While Plaintiff argues that the declarations and exhibits do not contain newly discovered evidence or demonstrate that this Court committed a manifest error of law in granting the preliminary injunction, that is not the standard applicable to the Motion for Reconsideration. As indicated above, that standard is applicable only to motions for reconsideration of final judgments under Rule 59 or 60, not to interlocutory orders such as this one. Further, I previously indicated that I would consider the evidence advanced by Defendants, even it was not newly discovered.

I also find that Plaintiff has not shown that the material should be stricken as redundant, immaterial, impertinent or scandalous as set forth in FED. R. CIV. P. 12(f). Further, he has not shown that the matters at issue, if not stricken, will cause the movant significant unfair prejudice. *See Sierra Club v. Young Life Campaign, Inc.*, 176

F. Supp. 2d 1070, 1086 (D. Colo. 2001). Indeed, I note that the declarations and exhibits at issue were not the basis for granting Defendants' Motion for Reconsideration.

Finally, I note that the Student Law Office who is counsel for Plaintiff indicated in its preliminary injunction motion that it would have to withdraw if the motion were not granted and the law students given access to Plaintiff. I urge the Student Law Office to reconsider this issue and determine if there is any way that it can stay in the case as counsel. Counsel for Plaintiff is ordered to provide a status report to the Court on this issue by August 20, 2008.

Based upon the foregoing, it is

ORDERED that Plaintiff's Motion to Reconsider filed January 29, 2008 (Doc. # 151) is **GRANTED**. The Order of January 17, 2008, which granted the Motion for Preliminary Injunction is **VACATED**. Plaintiff's Motion for Preliminary Injunction is now **DENIED**. It is

FURTHER ORDERED that Plaintiff's Motion to Strike Defendants' Declarations and Exhibits Attached to Their Motion for Reconsideration filed February 12, 2008 (doc. # 159) is **DENIED.** Finally, it is

ORDERED that counsel for Plaintiff shall provide a status report regarding whether they will continue to represent Plaintiff by **Wednesday, August 20, 2008**.

Dated: July 31, 2008

                                              BY THE COURT:

                                              s/ Wiley Y. Daniel
                                              Wiley Y. Daniel
                                              U. S. District Judge