IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   05-cv-02342-WYD-MJW (consolidated with
      Civil Action No. 05-cv-02653-WYD-MJW)

NIDAL A. AYYAD, et al.,

      Plaintiffs,

v.

ERIC H. HOLDER, JR., Attorney General of the United States;
HARLEY LAPPIN, Director of the Federal Bureau of Prisons;
MICHAEL NALLEY, Regional Director, North Central Region;
RON WILEY, Warden, United States Penitentiary - Administrative Maximum; and
JOHN DOES 1 THROUGH 5,
sued in their official capacities,

      Defendants.

---

**ORDER**

---

I.    INTRODUCTION

THIS MATTER is before the Court on the Government Defendants' "Motion for Order to Restrict Access to Certain Information in Plaintiff's Response to Defendants' Motion for Summary Judgment and Exhibits [Docs. 285 to 285-143]" filed February 27, 2012.  Plaintiffs filed a response on March 26, 2012, and a reply was filed on April 9, 2012.  For the reasons stated below, the Government Defendants' motion is granted.

II.    BACKGROUND

Plaintiffs are convicted terrorists as a result of their participation in the 1993 bombing of the World Trade Center.  Mahmud Abouhalima is subject to Special Administrative Measures ["SAMs"] which limit his contacts with others outside the prison based on the Attorney General's determination that allowing such communications

could pose an unreasonable risk to the life or safety of others. See 28 C.F.R. § 501.3. Until March 2012, Nidal Ayyad was also subject to SAMs, but the measures were not renewed following the SAMs annual review process. Plaintiffs challenge the SAMs under the First and Fifth Amendments to the Constitution of the United States. While they do not assert a facial attack upon the validity of the SAMs, Plaintiffs argue that the imposition and maintenance of the SAMs – especially at the level of severity involved – was and is unwarranted by the facts particular to them. Although Mr. Ayyad is no longer on SAMs, his claims based on the former SAMs remains pending at this time.

Plaintiffs' counsel have signed affirmations acknowledging receipt of the SAMs, awareness of the requirements in the SAMs, and an agreement to abide by the SAMs provisions for purposes of this case. Thus, in connection with Defendants' summary judgment motion filed on March 25, 2011, Plaintiffs filed their response brief and all exhibits thereto as "Level 1" restricted documents, meaning that access is limited to the parties and to the court. See D.C.COLO.LCivR 7.2B.5.

The Government Defendants [hereinafter "Government"] seek an order continuing the Level 1 restriction on access to some, but not all, of Plaintiffs' exhibits. The Government argues that these exhibits contain information that, if widely disseminated, could compromise national and institutional security, expose law enforcement sensitive information, or constitute an unwarranted invasion of personal privacy of individuals. The Government electronically filed with its motion redacted versions of another group of documents, including Plaintiffs' response brief to the summary judgment motion, in lieu of requesting that these documents be restricted in their entirety. There is also a large group of exhibits for which no restrictions or additional redactions are requested.

The Government summarizes the restrictions as follows:

• A level 1 restriction is sought as to access to exhibits 4, 5, 6, 8, 9, 11, 13, 16, 21, 22, 26, 29, 54, 64, 95, 99, 100, 121, 122, 126, 128, 140 and 141.

• Redacted versions have been submitted by the Government as to the following documents: Plaintiffs' response brief to the motion for summary judgment and exhibits 1, 2 (part 1), 2 (part 2), 3, 10, 12, 15, 17, 19, 20, 23, 24, 25, 30, 32, 39, 40, 44, 45, 46, 47, 48, 50, 55, 56, 57, 63, 66, 67, 68, 77, 85, 86, 87, 88, 89, 90, 101, 109, 113, 114, 115, 117, 118, 124, 125, 127 and 143. Level 1 restriction is no longer sought as to these redacted exhibits.

• Exhibits for which the Government seeks no continued restriction on access are exhibits 7, 14, 18, 27, 28, 31, 33, 34, 35, 36, 37, 38, 41, 42, 43, 49, 51, 52, 53, 58, 59, 60, 61, 62, 65, 69, 70, 71, 72, 73, 74, 75, 76, 78, 79, 80, 81, 82, 83, 84, 91, 92, 93, 94, 96, 97, 98, 102, 103, 104, 105, 106, 107, 108, 110, 111, 112, 116, 119, 120, 123, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139 and 142.

Plaintiffs do not oppose the vast majority of Defendants' proposed restrictions. The only restrictions they oppose are to certain statements in their own Declarations that the Government has redacted. Specifically, as to the Declaration of Mahmud Abouhalima (Exhibit 1 to response to the Government's motion), Plaintiffs oppose a Level One restriction of access to paragraphs 1-6, 139-40, and 143-46. As to the Declaration of Nidal Ayyad (Exhibit 2 to the response), Plaintiffs oppose a Level One restriction as to paragraphs 189 and 253-255.

III. ANALYSIS

    A. Legal Standard

Courts have long recognized "the existence of a common-law right of access to judicial records." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). "The right is an important aspect of the overriding concern with preserving the integrity of the law enforcement and judicial processes." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir.1985). However, the common-law right of access to judicial records "is

not absolute." *Nixon*, 435 U.S. at 598. "Every court has supervisory power over its own records and files. . . ." *Id.*

Thus, while there is a presumption that documents essential to the judicial process are to be made available to the public, they may be sealed when the public's right of access is outweighed by interests that favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) (citing *Nixon*, 435 U.S. at 602); *see also FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir.1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch."). It is within the district court's discretion to determine whether a particular court document should be sealed. *See Nixon*, 435 U.S. at 599. Whether a trial court exercises sound discretion will be based on the facts and circumstances of the individual case and the weighing of the parties' interests. *Riker v. BOP*, No. 0801123, 2009 WL 595943, at *2 (10th Cir. March 10, 2009) (unpublished) (citing *Hickey*, 767 F.2d at 708). The party seeking to overcome the presumption of access "'bears the burden of showing some significant interest that outweighs the presumption.'" *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (quotation omitted).

Consistent with the foregoing, Local Rule 7.2.B permits motions to restrict public access to documents filed with the Court. The rule requires the movant to "[a]ddress the interest to be protected and why such interest outweighs the presumption of public access," and "identify a clearly defined and serious injury that would result if access is

not restricted." D.C.COLO.LCivR 7.2B.2-3. The rule also requires the movant to "explain why no alternative to restricted access is practicable or why only restricted access will adequately protect the interest in question (e.g., redaction, summarization, restricted access to exhibits or portions of exhibits). *Id.* 7.2B.4.

B. <u>Documents Subject to the Motion that Plaintiff Does Not Object To</u>

I first grant the portion of the Government's motion that is not objected to by Plaintiffs, *i.e*, all the documents/exhibits the Government seeks to restrict, unrestrict, or redact except for the portions of Plaintiffs' Declarations that they assert should not be redacted.[1] The Government noted that allowing some of the documents to be unrestricted – such as Plaintiffs' letters and translations of their communications with others – would create an avenue for the inmates to effectively circumvent the SAMS and could be used by terrorists for fundraising, recruitment, and to inspire others to commit violent acts. Further, some of the documents reveal FBI investigatory methods and techniques, private information about others, and/or information that, if revealed, could jeopardize institutional safety.

As to the redacted documents the Government seeks to submit in lieu of restricted access, the redactions fall into six categories. First, the Government has redacted certain paragraphs of Plaintiffs' declarations, many of which redactions Plaintiffs do not object to. The Government argues that the restriction in the SAMs that limit the persons whom Plaintiffs can communicate with will be effectively circumvented if the Plaintiffs are permitted to use the opportunity to submit Declarations in this

---

[1] The redacted paragraphs of Plaintiffs' Declarations that are objected to are addressed in the next section.

-5-

litigation as a vehicle to communicate with the general public on matters which are not directly at issue, or to express their opinions, as opposed to stating facts based on personal knowledge.

Second, the Government seeks to redact identifying information for low-level Government personnel in order to protect their personal privacy. Third, it seeks to redact identifying information about Plaintiffs' relatives and acquaintances and the names of other inmates who are not parties to this litigation in order to protect their safety and privacy. Fourth, the Government seeks to redact the names of Plaintiffs' contacts from their current SAMs documents. These redactions are sought so that persons affiliated with terrorism will be prevented from utilizing specifically-identified current contacts as a means of connecting with these individuals to circumvent the SAMs. Fifth, the Government requests redactions to protect information concerning the FBI's and BOP's investigatory techniques and capabilities as to inmates who are subject to SAMs. Sixth, the Government requests redactions of descriptions of Mr. Abouhalima's statements and actions and the statements and actions of certain of his relatives with whom Plaintiff has interacted while subject to SAMs. These redactions protect the privacy of his relatives who have not submitted declarations in this matter and prevent this information from inspiring criminal activities. Finally, the Government requests that very minimal redactions, which track redactions made to other exhibits, be made to Plaintiff's response brief to the summary judgment motion.

I find from the foregoing that the Government has presented evidence establishing that national security interests outweigh the presumption of public access to the exhibits and/or redacted information in the exhibits. I also find that the

Government has demonstrated a clearly defined and serious injury that would result if access is not restricted, particularly as noted in the Declaration of Mr. Shannon that is attached to the motion.  Further, Plaintiffs have presented no argument or evidence to refute the Government's assessment that serious risks exist if the documents are not restricted or redacted, and that the interests to be protected outweigh the presumption of public access.  Indeed, Plaintiffs do not object to the restrictions and/or redactions requested by the Government that are at issue in this section of the Order.

Finally, I find as to the exhibits that the Government seeks to restrict access to that no alternative to restricted access is practicable and/or that only restricted access will adequately protect the national security interests in question.  D.C.COLO.LCivR 7.2B.4.  While the Government redacted many exhibits, the Government has noted identifiable injuries attendant on public dissemination of the restricted exhibits that cannot be ameliorated by redacting the exhibits, except in their entirety, rendering that an impractical alternative to restricted access.  Public filing on the Court's e-filing system would allow the dissemination of this sensitive information to individuals Plaintiffs are barred from contacting by the SAMs.  The Government has also shown that placing these documents in a case file that is publicly available over the internet would enable terrorists anywhere in the world to read about the FBI's investigation concerning Plaintiffs, review the comments of FBI and other Department of Justice personnel, draw conclusions from the FBI's investigatory techniques and strategies, and read about Plaintiffs' treatment in prison.

Accordingly, I grant the Government's motion as to its requests regarding all documents except the portion of Plaintiffs' redacted Declarations that they object to,

which are addressed below. The Level 1 restriction will remain in place as to the following exhibits to Plaintiffs' Response to Defendants' Motion for Summary Judgment: Exhibits 4, 5, 6, 8, 9, 11, 13, 16, 21, 22, 26, 29, 54, 64, 95, 99, 100, 121, 122, 126, 128, 140 and 141. The following documents shall be redacted per the Government's motion: Plaintiffs' Response to Defendants' Motion for Summary Judgment and exhibits 1, 2 (part 1), 2 (part 2), 3, 10, 12, 15, 17, 19, 20, 23, 24, 25, 30, 32, 39, 40, 44, 45, 46, 47, 48, 50, 55, 56, 57, 63, 66, 67, 68, 77, 85, 86, 87, 88, 89, 90, 101, 109, 113, 114, 115, 117, 118, 124, 125, 127 and 143. The Level 1 restriction will be lifted, and no restriction shall be imposed, as to Exhibits 7, 14, 18, 27, 28, 31, 33, 34, 35, 36, 37, 38, 41, 42, 43, 49, 51, 52, 53, 58, 59, 60, 61, 62, 65, 69, 70, 71, 72, 73, 74, 75, 76, 78, 79, 80, 81, 82, 83, 84, 91, 92, 93, 94, 96, 97, 98, 102, 103, 104, 105, 106, 107, 108, 110, 111, 112, 116, 119, 120, 123, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139 and 142. The procedure for the submittal of the Response Brief and its exhibits as modified per this Order is addressed in Section IV, *infra*.

    C.    <u>The Redactions in Plaintiffs' Declarations That Are Objected To</u>

The paragraphs in Plaintiffs' Declarations that they argue should not be redacted concern Defendants' treatment of Plaintiffs since they have been housed at ADX and Plaintiffs' reactions to that treatment. The Government asserts that this information should be withheld from the public on the grounds that it "could be construed as an attempt by Plaintiffs to communicate with individuals outside the prison on matters that are not directly at issue in this case, or to express their opinions on matters that do not bear on the relevant issues in this litigation." (Mot. for Order to Restrict Access to

Certain Information in Pls' Resp. to Defs.' Mot. for Summ. J. and Exhibits (Docs. 285 to 285-143), ECF No. 295 at 9 [hereinafter "Mot. to Restrict."])

Specifically, Mr. Shannon, an FBI counterterrorism official who has been designated in this case as both an expert witness and as a designee pursuant to Fed. R. Civ. P. 30(b)(6), explained the basis for the Government's requested redactions of portions of Plaintiffs' declarations as follows:

> Among the measures the Attorney General imposed on Plaintiffs is a limit on the persons with whom they can communicate. This restriction in the SAMs will be effectively circumvented if the Plaintiffs are permitted to use the opportunity to submit declarations in this litigation as a vehicle to communicate with the general public on matters which are not directly at issue, or to express their opinions, as opposed to stating facts based on personal knowledge, through declarations. As explained in detail in my previous declaration in this matter (*see* Doc. 259-1), the Government's concern is that *communications from Plaintiffs could be used by terrorists for fundraising, recruitment, and to inspire others to commit violent acts*.

(ECF No. 295-1,. Shannon Decl. at ¶ 3) (emphasis added). Mr. Shannon manages the FBI's responsibilities in connection with the SAMs for convicted terrorists housed at the ADX, including Mr. Abouhalima and, until very recently, Mr. Ayyad. (*Id.*)

Plaintiffs disagree with the Government's position. They argue that the Government has not met its burden of showing that public access to Plaintiffs' Declarations should be restricted.

I reject Plaintiffs' argument and find that the Government has met its burden of showing that a significant interest –in this case, national security – outweighs the public interest in right of access to the portions of Plaintiffs' Declarations that they argue should not be redacted. The context in which the Plaintiffs' statements are made is

unique, since Plaintiffs are convicted terrorists as a result of their roles in the bombing of the World Trade Center and are, or were until recently, subject to SAMs.

While Plaintiffs assert that the Government's concerns about transmittal of their communications are "non-specific" and "unsubstantiated", and/or do not show a "clearly defined and serious injury" (*see* Pls.' Resp. to Mot. to Restrict, ECF No. 300 at 5), I disagree based on Mr. Shannon's Declaration. That Declaration is entitled to deference in my assessment of whether national security interests outweigh the presumption of public access. *See Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2728 (2010) (the judgment and conclusions of Executive Branch personnel concerning matters of national security receive judicial deference). As noted by the Supreme Court, "Congress and the Executive are uniquely positioned to make principled distinctions between activities that will further terrorist conduct and undermine United States foreign policy, and those that will not." *Id.*; *see also Citizens for Peace in Space v. City of Colo. Springs*, 477 F.3d 1212, 1221 (10th Cir. 2007) (courts "have historically given special deference to other branches" in matters relating to national security "even when constitutional rights are invoked").

Nor, as Plaintiffs imply, is the Government obliged to point to specific risks tied to the particular statements in their Declarations before Executive Branch personnel charged with protecting national security may conclude that unrestricted public access to those statements creates unacceptable risks. As stated by the Supreme Court:

> [N]ational security and foreign policy concerns arise in connection with efforts to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess. The dissent slights these real constraints in demanding hard proof—with "detail," "specific facts," and "specific evidence"—that plaintiffs' proposed activities will support

> terrorist attacks. . . .That would be a dangerous requirement. In this context, conclusions must often be based on informed judgment rather than concrete evidence, and that reality affects what we may reasonably insist on from the Government. . . . The material-support statute is, on its face, a preventive measure—it criminalizes not terrorist attacks themselves, but aid that makes the attacks more likely to occur. The Government, when seeking to prevent imminent harms in the context of international affairs and national security, is not required to conclusively link all the pieces in the puzzle before we grant weight to its empirical conclusions. See *Zemel v. Rusk,* 381 U.S., at 17, 85 S.Ct. 1271 ("[B]ecause of the changeable and explosive nature of contemporary international relations, ... Congress ... must of necessity paint with a brush broader than that it customarily wields in domestic areas").

*Humanitarian Law Project*, 130 S. Ct. at 2727-2728.

The Government has sought minimal redactions which it asserts are reasonably calculated to protect national security interests. The proposed redactions in no way compromise Plaintiffs' ability to litigate their claims, and the Court and the parties have full access to the redacted information. Under these circumstances, where a Government official with expertise in counterterrorism has concluded that the minimal restrictions sought could thwart new acts of violence and terrorism, I agree with the Government that the Court should err on the side of restricting access.

I also reject Plaintiffs' argument that the Government's stated concerns about moot as to Mr. Ayyad, whose SAMs were not renewed. The Government's specific concerns as to the statements at issue here are not eliminated by the removal of the SAMs because of the particular context in which the statements appear, *i.e.*, a voluminous Declaration that is fundamentally tied to the SAMs. See Ex. 2 at ¶¶ 110-262 (paragraphs discussing SAMs).

Further, I find that the reaction that Mr. Ayyad's statements, read in the context of his Declaration, may generate among terrorist sympathizers outside the prison is not

diminished because his SAMs have been removed.  The Declaration is retrievable from electronic databases and therefore can be disseminated and read independently of other documents in this case, and the readers may not know that Mr. Ayyad's SAMs have been removed.  The Government asserts that the proposed redactions help to alleviate risks to national security associated with a combination of Mr. Ayyad's rhetoric and the SAMs restrictions.  The Government also asserts that when working to defuse terrorist threats, it must necessarily make informed predictions about how affiliates of terrorist networks outside the prison will respond to information concerning the perceived plight of convicted terrorists in United States prisons.  Here, the Government's informed assessment is that widespread dissemination of these communications could be used by terrorists to raise funds and to inspire and gain recruits for a cause that jeopardizes the security of the United States.  I must respect that assessment as "'the lack of competence on the part of courts is marked. . .'" in the area of national security.  *Humanitarian Law Project*, 130 S. Ct. at 2727 (quotation omitted).  Accordingly, I find that the risks outlined by the Government from disclosure of the paragraphs at issue in Mr. Ayyad's Declaration outweigh the presumption of public access.[2]

Finally, Plaintiffs assert that the Government itself has documented and released information regarding the mistreatment of those charged with and convicted of terrorism-related crimes, and the details of such mistreatment have been recounted in

---

[2] In addition, paragraph 189 of Ayyad's declaration implicates prison security and inmate privacy concerns by revealing the number of prisoners located in a particular range of the prison and identifying other prisoners who are not parties to this litigation by name and housing assignment.

publicly-available judicial opinions. They argue that the public nature of this information belies the Government's concerns about the potential risks associated with allowing the public to read the challenged portions of Plaintiffs' declarations. I find, however, that the fact there are other public statements about alleged mistreatment of prisoners does not allow the Court to infer that there are no risks associated with the statements from these particular convicted terrorists. The Government has argued otherwise, and I must give deference to the evidence it has presented.

I find from the foregoing that the Government has met its burden of identifying a clearly defined and serious injury that would result if access to the paragraphs of the Declarations at issue in this section is not restricted. I also find that the Government has shown why such interest outweighs the presumption of public access.

IV.   CONCLUSION

Based on the foregoing, I find that the Government's motion should be granted in its entirety. The next issue is, however, how the Government's requests in its motion should be accommodated. I find that it would not be feasible for the Clerk's Office to undertake the modifications to the Response and exhibits requested by the Government. Instead, I direct the parties to meet and confer regarding the format of the modified Response Brief, and to then file a new Response Brief and exhibits that reflect the restrictions and redactions as requested in the Government's motion. It is therefore

ORDERED that the Government Defendants' "Motion for Order to Restrict Access to Certain Information in Plaintiff's Response to Defendants' Motion for Summary Judgment and Exhibits [Docs. 285 to 285-143]" filed February 27, 2012 is **GRANTED**. It is

FURTHER ORDERED on or before **Friday, May 11, 2012**, the parties shall meet and confer and file a new Response to Defendants' Motion for Summary Judgment and exhibits thereto which reflect the restrictions, redactions and other modifications requested in the Government's motion. Upon the filing of that document, the Clerk's Office shall then note on the electronic docket that the original Response Brief and exhibits are withdrawn per the filing of the modified Response.

Dated: April 24, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge